SHRIVER INSURANCE AGENCY, Plaintiff-Appellee, v. UTICA MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—00—0877

Opinion filed June 12, 2001.

Robert Marc Chemers, Richard M. Waris, and David S. Osborne, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

Richard R. Winter and Charles L. Philbrick, both of McBride, Baker & Coles, of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Utica Mutual Insurance Company (Utica), appeals from the denial of its motion to dismiss and the entry of summary judgment in favor of plaintiff, Shriver Insurance Agency (Shriver), by the circuit court of Du Page County. The court found that the exclusion upon which Utica relied in disclaiming its duty to defend Shriver in an action brought against it by Reliance Insurance Company (Reliance) did not apply and that Utica was liable to Shriver for the expenses Shriver incurred in defending the underlying action.

On appeal, Utica contends that the trial court erred in granting Shriver's summary judgment motion, as the comparison of the allega-

tions in Reliance's complaint with the language of Utica's insurance policy established that Utica had no duty to defend Shriver in the lawsuit brought by Reliance. Additionally, Utica contends that the "true but unpleaded facts" doctrine relied upon by the trial court did not apply to create the potential for coverage.

Shriver is an insurance agency that had a contract for several years with Home State Holdings Group (Home State) to act as Home State's agent. As its agent, Shriver collected and remitted premiums on insurance policies issued under the contract. Home State sold insurance on behalf of out-of-state insurance companies, or "fronting companies." Up until May 1997, Home State sold insurance on behalf of Security Insurance Company (Security). It also sold insurance on behalf of Reliance. In May 1997, the policies covering Shriver's customers, Robinson Bus Company and White Transportation (collectively Robinson), which had been fronted by Security for Home State, were canceled by Home State four months before expiration. Home State issued new policies, fronted by Reliance, at a lower rate. As a result, Home State owed Shriver approximately $208,000 in unearned premiums on the canceled Security policy and Shriver owed Home State an undisclosed amount for the premiums on the Reliance policy. The new policy had a new deposit and new installments. Home State told Shriver that it could offset the old premium on the Security policy against the new premium on the Reliance policy.

Subsequently, Reliance wrote Shriver, informing it that Shriver should not be offsetting premiums and that it should be paying Reliance directly. In August 1998, Reliance filed a complaint in the United States District Court for the Northern District of Illinois, alleging that Shriver had failed to pay Reliance the premiums it collected on the insurance policies issued to Robinson.

At the time Reliance brought its action against Shriver, Shriver had an insurance broker's "errors and omissions" liability policy with Utica. Pursuant to that policy, Utica agreed to defend any claim asserting "a negligent act, error or omission" first made during the policy period even if the allegations of the claim were groundless, false, or fraudulent. On November 9, 1998, Shriver notified Utica of the lawsuit, explaining the circumstances giving rise to Reliance's claim. In a letter dated November 19, 1998, Utica acknowledged notice of Shriver's claim and enclosed a questionnaire for Shriver to complete. Shriver completed and returned the questionnaire.

On February 3, 1998, Utica advised Shriver that, based on the exclusion section of its errors and omissions policy, it would not defend or indemnify Shriver for any damages or expenses relating to the lawsuit. That section provided in relevant part:

**"SECTION IV—EXCLUSIONS**
This insurance does not apply to any **claim** for, or arising out of:
\* \* \*
4. Any liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies."

Shriver defended itself.

The federal district court held that Shriver was entitled to offset its debt to Home State on the Reliance policy against Home State's debt to Shriver on the Security policy. The Seventh Circuit Court of Appeals subsequently affirmed the district court's decision. *Reliance Insurance Co. v. Shriver, Inc.*, 224 F.3d 641 (7th Cir. 2000).

Because of Utica's refusal to defend Shriver, Shriver brought an action for declaratory judgment, estoppel, and breach of contract against Utica. Utica moved to dismiss the action pursuant to section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 1998). Utica asserted that, because its errors and omissions policy excluded coverage for "liability for money received by an insured or credited to an insured for \*\*\* premiums" and because the basis for the underlying action was that Shriver owed Reliance money for premiums on an insurance policy, Utica owed no duty to defend Shriver. Consequently, Shriver's complaint should be dismissed for failure to state a cause of action.

Shriver responded to Utica's motion to dismiss and also filed a motion for summary judgment. Shriver argued that paragraph four of section IV of Utica's errors and omissions policy did not apply because that exclusion applied only to "liability for money received" and the wrongful conduct in question in the underlying action was Shriver's alleged "failure to pay" and not its "liability for money received." Additionally, Shriver contended that, where an insurer is aware of true but unpleaded facts indicating that a claim is potentially covered, the insurer must defend. Attached to Shriver's motion was the affidavit of the president of Shriver, Charles M. Shriver (Charles Shriver or Mr. Shriver), and a copy of the letter he sent to Utica informing it of Reliance's action against Shriver and of the facts leading up to the lawsuit. Utica filed a reply in support of its motion to dismiss and as a response to Shriver's motion for summary judgment. Additionally, Utica filed its own motion for summary judgment, incorporating the arguments and authorities it relied upon in its motion to dismiss and in the aforementioned reply and response.

Relying specifically on the letter sent by Charles Shriver to Utica, the trial court granted Shriver's motion for summary judgment. The court found that Utica's duty to defend had been invoked by true but

unpleaded facts known to Utica as evidenced by Shriver's correspondence to Utica. This appeal ensued.

●1 Utica first contends that the trial court erred in granting Shriver's motion for summary judgment because a comparison of the allegations in Reliance's complaint with the language of Utica's errors and omissions insurance policy established that Utica had no duty to defend Shriver in the lawsuit. Summary judgment is proper when the pleadings, depositions, and the admissions on file, along with any affidavits, show that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Cosgrove v. Commonwealth Edison Co.*, 315 Ill. App. 3d 651, 654 (2000). Our review of a ruling on a motion for summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

●2 Whether an insurer has a duty to defend depends on a comparison of the allegations of the underlying complaint to the relevant policy provisions. *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 500 (1998). The allegations of the complaint and not the findings of the underlying litigation are dispositive of the insurer's duty to defend. *Northbrook Property & Casualty Insurance Co. v. Transportation Joint Agreement*, 309 Ill. App. 3d 261, 264 (1999). In determining an insurer's duty to defend, courts must liberally construe both the insurance policy and the underlying complaint in favor of the insured. *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 725 (1996). An insurer must defend only if the complaint alleges facts within or potentially within the coverage of the policy, unless the insurer possesses knowledge of true but unpleaded facts that, when taken together with the allegations in the complaint, indicate that the claim is within or potentially within the policy coverage. *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 929 (1993).

In its lawsuit Reliance sought to recover from Shriver premiums for several insurance policies Reliance issued to two of Shriver's customers. Specifically, Reliance's complaint alleged:

"7. Shriver collected premiums for the aforesaid policies on behalf of Reliance, which premiums Shriver was obligated to pay to Reliance.

8. Shriver has failed and refused to pay said premiums, amounting to $259,169, to Reliance.

9. Shriver is indebted to Reliance in the sum of $259,169.15 plus interest."

The provisions of the errors and omissions policy applicable in the present case provided in relevant part:

## "SECTION II—COVERAGE
*   *   *

### 1. Coverage

On behalf of the insured we will pay for **loss** up to the Limits of Liability, in excess of the deductible, that the insured becomes legally obligated to pay as a result of a **claim** first made against the insured during the **policy period**, or any Extended Reporting Period provided. The **loss** must arise out of the negligent acts, errors, or omissions in the conduct of the insured's business ***.
*   *   *

With respect to the insurance afforded by this policy, we shall defend any **claim** first made during the **policy period** seeking damages to which this insurance applies even if the allegations of the **claim** are groundless, false, or fraudulent. We may make such investigation of any negligent act, error, or omission as we deem expedient
*   *   *

### SECTION IV—EXCLUSIONS

This insurance does not apply to any **claim** for, or arising out of:
*   *   *

4. Any liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies."

Utica maintains that the complaint's allegations set forth precisely the type of risk Utica sought to exclude in the foregoing exclusion. Shriver disagrees, arguing that Reliance's claim was for Shriver's failure to pay premiums and that, based on the language of the exclusion, such a claim was not excluded.

●3 When construing the language of an insurance policy, courts must accord terms their plain and ordinary meaning and apply those terms as written unless such application contravenes public policy. *Pekin Insurance Co. v. Willett*, 301 Ill. App. 3d 1034, 1037 (1998). Provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 442 (1998). But, if an exclusion is clear and unambiguous and does not contravene public policy, it will be applied as written. *Pekin Insurance Co.*, 301 Ill. App. 3d at 1037.

●4 Here, the clear and unambiguous language of the exclusion demonstrates that the exclusion applied to the allegations of Reliance's complaint. Shriver, however, contends that, because Reliance sued for Shriver's failure to pay premiums to Reliance and not for money received for premiums, the exclusion did not apply. We do not agree. To accept Shriver's argument we would have to conclude, as Utica

points out, that Shriver's "failure to pay" had nothing to do with the fact that it had collected premium monies due Reliance. However, the complaint alleges that Shriver "collected premiums" for Reliance and then failed and refused to pay those premiums to Reliance. According to Reliance's complaint, the basis for Shriver's liability was Shriver's failure to forward to Reliance the premiums collected or received on behalf of Reliance for insurance policies issued by Reliance.

Shriver also contends that, for Reliance's lawsuit to constitute a "claim for, or arising out of any liability for money received by [Shriver]," Reliance had to allege that Shriver's receipt of the money was "wrongful." Shriver asserts that, because "Reliance made no allegation that Shriver's actual receipt of the premiums to be collected was in some way wrongful," the exclusion did not apply. However, the exclusion makes no reference to the wrongful receipt of money by an insured, and we refuse to read such an interpretation into it. The explicit language of the exclusion denies coverage for *any* liability for money received for premiums and not just liability brought about by an insured's wrongful receipt of premium money. We agree with Utica that Reliance's complaint alleged the type of risk Utica intended to exclude from coverage.

Illinois courts have not published any decisions interpreting the identical exclusion at issue here. However, similar or identical exclusions have been interpreted by a number of other jurisdictions, and we find particularly instructive the decision in *Utica Mutual Insurance Co. v. Miller*, 130 Md. App. 373, 746 A.2d 935 (2000), wherein the exclusion in question was identical to the exclusion at issue in the present case.

In *Miller*, the appellant, Utica Mutual Insurance Co. (Utica Mutual), contended that the trial court erred in determining that it had a duty to defend the appellee, Miller, because the "money received" exclusion in its errors and omissions policy barred coverage. In considering this issue, the Maryland Court of Special Appeals pointed out that, in determining whether coverage potentially existed, it must compare the insurance policy to the allegations set forth in the underlying action. *Miller*, 130 Md. App. at 384, 746 A.2d at 940. The court stated that the "gravamen" of the underlying complaint was that the insured broker (Miller) "failed to remit $326,480.12 in premiums collected on behalf of" an insurer. *Miller*, 130 Md. App. at 384, 746 A.2d at 940. The court determined that, if the only cause of action asserted in the underlying complaint was "based on [Miller's] failure to remit premiums collected, [the court] would hold that [Utica Mutual] had no duty to defend under the monies received exclusion" *Miller*, 130 Md. App. at 385, 746 A.2d at 942.

Unlike our case, however, the underlying complaint in *Miller* contained other claims that did not fall under the express provisions of the money-received exclusion and, therefore, Utica Mutual had a duty to defend on those alternate claims. Nonetheless, the court repeated its prior determination regarding the application of the exclusion, stating that, "[i]f at some point during litigation these [alternate] claims were dismissed, and all that remained were the claims based on the premiums received, then [Utica Mutual's] duty to defend would be extinguished." *Miller*, 130 Md. App. at 387, 746 A.2d at 942.

Here, as in *Miller*, the "gravamen" of the underlying complaint was that the insured broker, Shriver, failed to remit $259,269.15 in premiums collected on behalf of Reliance. Thus, on the face of the complaint, the allegations failed to state facts that brought the case within or potentially within the policy's coverage. A comparison of the complaint with the exclusion in question leads us to conclude, as did the court in *Miller*, that a claim based on premiums collected but not forwarded to an insurer is excluded from coverage under the insurer's errors and omissions policy.

Shriver contends, however, that *Miller* is distinguishable because the broker there, unlike Shriver, had actually received the disputed premiums. Here, Shriver asserts, Utica was aware of the true but unpleaded fact that Shriver never received the return premium from Home State or the premiums from the new Home State policy fronted by Reliance. Therefore, even if the allegations of the underlying complaint alone did not put Utica on notice of its duty to defend, the complaint together with unpleaded facts that Utica learned of after the filing of the complaint triggered its duty to defend.

Utica argues that the "true but unpleaded facts" doctrine applies only to facts taken in addition to the allegations of the underlying complaint and not to facts that are offered in contravention of the allegations. Utica maintains that Shriver did not offer any additional facts but, instead, asked the court to reject the complaint's allegations in favor of Shriver's version of the "true facts." Utica asserts that the record is absent of any testimony that the statements in Shriver's correspondence were true or that Utica knew them to be true. Alternatively, Utica argues that, even if Shriver's unpleaded facts were true, the facts have no bearing on the duty to defend.

Shriver responds that Utica never disputed the facts offered by Shriver in support of its motion for summary judgment and that the trial court noted, in making its ruling, that Utica made no contention that "the facts as claimed by Shriver in its motion and as provided to Utica by Shriver were anything but true." The trial court's ruling, however, ignored Utica's contention in its motion to dismiss that

Shriver's attachments to its summary judgment motion (which included Charles Shriver's affidavit, his letter to Utica, and Utica's questionnaire) did "not place at issue any 'true but unpleaded facts known to the insurer to be correct.' " Utica also contended that Charles Shriver's belief that he was not liable did not equate with knowledge by Utica that Shriver was "correct" in his assertion. We are of the opinion that these contentions by Utica sufficiently communicated its position that it was not accepting the facts as related by Charles Shriver to be true. Also, the bystander's report, filed in lieu of a report of proceedings of the hearing before the trial court, states that Utica advised the court that it would rest on the arguments it presented in its motion to dismiss as well as in its subsequent motion for summary judgment. Consequently, in our view, the record before us does not support the trial court's conclusion that Utica did not contest the veracity of the facts as claimed by Shriver.

In making its ruling that Utica's duty to defend had been invoked by true but unpleaded facts known to Utica, the trial court stated that it found "most helpful" this court's decision in *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926 (1993). However, our decision in *Indiana Insurance Co.* was not based on the "true but unpleaded facts" doctrine because there was no evidence of unpleaded facts that indicated that the underlying claim fell within or potentially within the policy coverage. *Indiana Insurance Co.*, 245 Ill. App. 3d at 929. Moreover, we do not believe that the doctrine was meant to be applied to situations such as existed in this case, *i.e.*, where the only extraneous facts the insurer possessed were supplied by the insured. In such a situation the insurer has no way of knowing whether the facts are true unless it conducts an independent investigation. A similar conclusion was set forth in a footnote in *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807, 817 n.5 (1979), the case that established the "true but unpleaded facts" doctrine in Illinois.

Typically, in cases where the "true but unpleaded facts" doctrine has been applied to show that an insurer had the duty to defend, the extraneous facts possessed by the insurer and known to be true were facts the insurer discovered during its own investigation of the underlying action.

In *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill. App. 3d 446 (1980), the court determined that Royal Globe had a duty to defend where the results of its own investigation disclosed the true but unpleaded fact that all of the land in question was not used as a junkyard or refuse dump. Therefore, smoke from the land, which caused a driving accident on a neighboring road, might have come from the vacant part of the land and not the junkyard, making the business exclusion in Royal Globe's policy inapplicable.

In *Associated Indemnity Co.*, the insurer, Insurance Company of North America (INA), knew that unpleaded facts related to it by Associated Indemnity were true. INA possessed a file containing documents produced in the underlying litigation that verified the truth of Associated Indemnity's facts. Also, INA knew the facts to be true because it was defending another party in the underlying action. *Associated Indemnity Co.*, 68 Ill. App. 3d at 818-19.

Nonetheless, even if we were to accept the trial court's conclusion in the instant case that Shriver's unpleaded facts must be assumed to be true, we do not believe these facts raised the possibility that Reliance's action against Shriver was within the coverage of Utica's policy.

The exclusion in question provided:

> "This insurance does not apply to any **claim** for, or arising out of:
>
> * * *
>
> 4. *Any liability for money* received by an insured or *credited to an insured* for fees, *premiums*, taxes, commissions, loss payments, or escrow or brokerage monies." (Emphasis added.)

In his letter to Utica, Charles Shriver explained the facts leading up to Reliance's lawsuit. He explained that a policy fronted by Security of Hartford for Home State had been canceled early and that the "eventual return premium under the policy *** was a credit due back from [Home State] on our account current." According to Mr. Shriver's letter, Home State issued a new policy fronted by Reliance and told Mr. Shriver that he could use the old premium against the new premium as an offset. Mr. Shriver further stated in his letter that Reliance subsequently informed him that he should not be offsetting premiums and that he should be paying Reliance directly. Mr. Shriver explained that he had no contract with Reliance but that Home State advised him to send money directly to Reliance. Mr. Shriver stated further that he contacted Reliance and explained to it that he "would be using the offset premium on Robinson Bus which Home State said [he] could use." He further stated that, after receiving Reliance's approval, he "sent a check for $166,000 and used the offsetting *credit premium* from Home State for the balance that was due." (Emphasis added.) He then explained to Utica how he subsequently received a statement from Reliance asking him for monies that he had already paid through the premium offset and the check he had sent. Mr. Shriver advised Utica of the pending lawsuit.

Charles Shriver's letter establishes that the premium money at issue in the Reliance lawsuit was credited to Shriver and that Mr. Shriver, in turn, applied the credit premium as payment on the

premium due on the policy fronted by Reliance. Nothing in Mr. Shriver's letter proves that the premium was credited to the account of the policyholder, as Shriver alleges in its brief.

Upon receiving Charles Shriver's letter, Utica sent him a questionnaire, instructing him to complete it and to return it "with all related files material." From the record before us, we cannot discern what "files material," if any, was submitted by Mr. Shriver to Utica. The only documents in the record that appear to have been sent to Utica are Charles Shriver's letter and the questionnaire he completed. Charles Shriver's responses to the questionnaire indicate that the error alleged to have been committed by his insurance agency pertained to a dispute over a premium. In the column where Mr. Shriver was to check the alleged "cause of loss," he checked "other." The causes of loss listed on the questionnaire clearly dealt with negligent acts, errors or omissions, *i.e.*, conduct the policy was designed to cover. However, Reliance's complaint did not allege negligent conduct on the part of Shriver.

Throughout its brief, Shriver refers to the investigation Utica conducted after receiving Charles Shriver's letter and to the facts Utica learned from that investigation. However, the record reveals that Utica's questionnaire constituted the extent of its investigation. After receiving Charles Shriver's responses to the questionnaire, Utica apparently determined that no further investigation was required, and, in our view, such a determination was justified. The face of the complaint, the contents of Charles Shriver's letter, and his responses to Utica's questionnaire demonstrated that Reliance's lawsuit pertained to a claim for money either received by Shriver or credited to Shriver for a premium. We conclude, therefore, that Reliance's complaint alleged a premium dispute and that, even when considered with the extraneous facts set forth in Charles Shriver's letter, the dispute was excluded from coverage.

Accordingly, because Utica owed no duty to defend Shriver, Shriver's complaint failed to state a cause of action. We, therefore, reverse the judgment of the circuit court of Du Page County and remand this cause for the entry of judgment on Utica's motion to dismiss.

Reversed and remanded.

McLAREN and O'MALLEY, JJ., concur.