# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellee, v. PRECISION DOSE, INC., FRANK DARNELL, JAMES KLEINHEINZ, ROBERT KOOPMAN, WARREN SWANSON, JAMES ARTHUR, and DAVID ZOELLNER, as Shareholders of Xactdose, Inc., Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-11-0195 |
| Filed | March 16, 2012 |
| Rehearing denied | May 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for plaintiff insurer on its complaint seeking a declaratory judgment that it had no duty to defend its insured under a commercial general liability policy in an underlying action for breach of fiduciary duty that resulted in economic losses to plaintiffs, minority shareholders of a company, when defendants, as majority shareholders and directors of plaintiffs' company, formed and operated another company engaged in the same business, since plaintiff insurer lacked knowledge of true but unpleaded facts indicating that the claims were potentially covered, defendants breached the notice provision of the policy by failing to timely present the insurer with facts concerning the conduct at issue, if the amended underlying complaint had alleged that the new company "assumed operations" of the old company's business rather than its factory, the claim might have been within the advertising injury coverage, and the allegation that the new company assumed operations of the old company's factory was not an allegation of wrongful conduct by defendants. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 06-MR-514; the Hon. Eugene G. Doherty, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Marc C. Gravino, Scott C. Sullivan, and Adam B.E. Lied, all of WilliamsMcCarthy LLP, of Rockford, for appellants. |
| | Robert Marc Chemers, Darryl L. Awick, and Richard M. Burgland, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices McLaren and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Pekin Insurance Company issued a commercial general liability (CGL) policy covering Xactdose, Inc., a packager and distributor of single-dose units of liquid medication. While serving as directors of Xactdose, Frank Darnell, James Kleinheinz, and Robert Koopman (collectively, defendants) allegedly formed and operated another company, defendant Precision Dose, Inc., which engaged in the same type of business. The policy was amended to name Precision Dose as an insured. Warren Swanson, James Arthur, and David Zoellner (collectively, plaintiffs) were the minority shareholders of Xactdose. Plaintiffs filed an amended complaint against defendants, derivatively on behalf of Xactdose, for breach of fiduciary duty.

¶ 2    Defendants tendered plaintiffs' suit to Pekin for defense and indemnity. Pekin denied that the policy covered any of the claims in the underlying suit, which eventually was dismissed. Pekin filed a declaratory judgment action in this case, seeking a declaration that it had no duty to defend. Pekin and defendants filed cross-motions for summary judgment, and Pekin additionally moved to strike the affidavit of Koopman, the former president of Xactdose and current president of Precision Dose. Pekin argued that the affidavit contained facts of which Pekin was unaware when coverage was denied, and therefore the facts were not relevant to whether the denial of coverage was proper.

¶ 3    The trial court struck the affidavit and granted Pekin summary judgment, and defendants appeal. Defendants argue that the trial court erred in striking the affidavit and in determining that Pekin did not owe defendants a duty to defend the underlying suit. First, we hold that, even though "a circuit court may, under certain circumstances, look beyond the underlying

complaint in order to determine an insurer's duty to defend" (*Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 459 (2010)), the trial court did not err in striking Koopman's affidavit on the ground that Pekin was unaware of the contents of the affidavit, which arguably would have shown that the claims asserted against defendants were potentially within the coverage of the insurance policy (*cf. Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 87 (2010) ("an insurance carrier may not ignore unpleaded facts within its knowledge, which it knows to be correct, and which, when taken together with the complaint's allegations, indicate that the claim asserted against the putative insured is potentially within the coverage of the insurance policy" (internal quotation marks and emphasis omitted)). Second, we hold that the allegations in the amended complaint were not potentially within the policy's coverage, and therefore Pekin is entitled to summary judgment. We affirm.

¶ 4                                                            FACTS
¶ 5                                       A. The Underlying Amended Complaint
¶ 6        On March 29, 2006, plaintiffs filed a complaint against Precision Dose and defendants. The four-count complaint asserted claims for shareholder relief and an accounting (see 805 ILCS 5/12.56 (West 2010)), common-law fraud, breach of fiduciary duty, and successor-corporation liability that resulted in economic losses to plaintiffs. On November 15, 2006, plaintiffs filed an amended complaint alleging breach of fiduciary duty against defendants. The amended complaint substituted Xactdose for Precision Dose as a defendant and did not incorporate the original complaint by reference.

¶ 7        In their reply brief, defendants suggest that "since [this] is a case involving both an original complaint and an amended complaint, the duty to defend issue is not necessarily an 'all or nothing' proposition." Acknowledging the possibility that plaintiffs' amendment of the underlying complaint might have no bearing on Pekin's duty to defend, defendants speculate that perhaps "the original complaint that named Precision Dose triggered a duty to defend for at least a period of time until the amended complaint was filed," at which point the change in the underlying claims might have extinguished Pekin's duty to defend. Defendants offer no analysis as to how changing the claims and naming Xactdose and removing Precision Dose as a defendant in the underlying suit might have affected Pekin's duty to defend. In fact, the parties do not specify whether the insureds tendered the defense to Pekin before plaintiffs amended their complaint.

¶ 8        The trial court concluded that Pekin owed no duty to defend the original complaint or the amended complaint. We conclude that defendants have procedurally defaulted any argument regarding whether Pekin owed a duty to defend the original complaint. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006) ("Points not argued are waived ***."); see also *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154 (1983) (where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes, being in effect abandoned and withdrawn). Accordingly, we need address only the amended complaint, which alleged only claims of breach of fiduciary duty against defendants and named Xactdose as a defendant.

¶ 9 The three-count amended complaint alleged that defendants were majority shareholders and served as three of the four directors of Xactdose. Plaintiffs were the minority shareholders, with Arthur serving as the fourth director. Defendants allegedly "formed an 'alliance' and were essentially in control of the corporation." On June 24, 2003, a special Xactdose shareholders meeting was held to discuss Xactdose's financial state and its future. Zoellner was the only shareholder who was not present. At the time of the meeting, Xactdose's financial state had been significantly affected by the termination of its contract with Alpharma Pharmaceuticals, a company in the business of developing, manufacturing, and marketing generic liquid pharmaceuticals. The shareholders discussed Xactdose's state of insolvency, the lack of potential investors and profitable products, and the means by which Xactdose should "wind down" its business and dissolve. Based on discussions at the meeting, the shareholders who were present resolved four-to-one to wind up Xactdose's business, sell its assets to defendants for $1.4 million, and dissolve Xactdose.

¶ 10 Allegedly unknown to plaintiffs, on April 9, 2003, defendants incorporated Precision Dose and became its majority shareholders, officers, and directors. The amended complaint alleged that "Precision Dose began assuming operations of the Xactdose packaging factory" and immediately began earning a profit by promoting Megestrol, a new generic liquid medication. Upon information and belief, plaintiffs alleged that Precision Dose sold units of Megestrol earning (1) a $1.8 million profit "in fiscal year 2003/2004," (2) a $4.3 million profit in 2005, and (3) a projected $10 million profit in 2006.

¶ 11 Besides the preceding allegations common to all counts, the amended complaint contained three identical counts of breach of fiduciary duty directed against defendants. The claims alleged that, at the June 24, 2003, meeting, defendants denied that there were any potential products under development that could have any positive financial impact on Xactdose or on the shareholders themselves. Specifically, defendants failed to mention Megestrol. For several months before the meeting, defendants allegedly had been engaging in discussions with multiple individuals about the future of the single-unit liquid medication packaging industry and their own futures personally. Defendants discussed with Tom Anderson, the former Alpharma president, the possibility of setting up a partnership with ANI Pharmaceuticals so that Precision Dose and ANI could develop and market new unit-dose products. Defendants also held discussions with PAR Labs regarding the development of Megestrol, the potential future market for the product, and a future business partnership between Precision Dose and PAR Labs. Defendants negotiated with ANI, PAR Labs, and other pharmaceutical companies and laboratories for the express purpose of diverting potential future business opportunities from Xactdose to Precision Dose. Defendants allegedly never disclosed to plaintiffs that they were involved in discussions with these companies or that there was a potential market for Megestrol or any other product.

¶ 12 Further, defendants allegedly had never accounted for the $1.4 million payment owed to Xactdose or any of the other winding-up activities. Defendants had represented to plaintiffs that they would apply the purchase price to Xactdose's corporate debts, which defendants had guaranteed personally. However, defendants allegedly created a windfall for themselves by negotiating the debt downward, to perhaps as much as 80% off the original amount, and retaining the remainder without disbursing the entire $1.4 million on behalf of Xactdose.

¶ 13 The breach-of-fiduciary-duty counts alleged that, as officers, directors, and shareholders of Xactdose, defendants owed Xactdose a duty of loyalty, good faith, and honesty. However, by misrepresenting and withholding information vital to plaintiffs and by diverting corporate opportunities for their own personal benefit, defendants breached their fiduciary duties to Xactdose and its shareholders. Plaintiffs sought compensatory and punitive damages, a constructive trust on any profits or income realized by defendants as a result of their "wrongful conduct," an accounting of the sale of assets and other winding-up activities, and costs.

¶ 14                           B. Declaratory Judgment Action

¶ 15 On January 29, 2007, Pekin filed an amended complaint for declaratory judgment, setting forth the following facts. Pekin issued a CGL policy, No. 00CL85805, to Xactdose as the named insured. The policy was amended on June 30, 2003, to name Precision Dose as the named insured. Defendants qualified as insureds under the policy by virtue of their roles as directors and shareholders of Xactdose. The policy was to be effective from February 27, 2003, through February 27, 2004, but it was cancelled on January 22, 2004. The policy provided in relevant part as follows:

> "Coverage B. Personal and Advertising Injury Liability
>
> 1. Insuring Agreement.
>
>     a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result. But:
>
>         (1) The amount we will pay for damages is limited as described in Limits of Insurance (Section III); and
>
>         (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments–Coverages A and B.
>
>     b. This insurance applies to:
>
>         (1) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by you or for you; and
>
>         (2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products, or services;
>
> but only if the offense was committed in the 'coverage territory' during the policy period."

¶ 16 The policy defines "advertising injury" and "personal injury" as follows:

"Section V–Definitions

1. 'Advertising injury' means injury arising out of one or more of the following offenses:

\* \* \*

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title, or slogan.

\* \* \*

13. 'Personal injury' means injury, other than 'bodily injury' arising out of one or more of the following offenses;

\* \* \*

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor."

¶ 17 At some unspecified time after plaintiffs filed their action, defendants tendered their defense to Pekin, which refused the tender. Pekin then filed this declaratory judgment action seeking a declaration that it owed no duty to defend the underlying action.

¶ 18 Defendants filed an answer, affirmative defense, and counterclaim to Pekin's amended complaint for declaratory judgment. Defendants' counterclaim alleged that Pekin had a duty to defend against plaintiffs' action because the underlying complaint alleged "personal injury" or "advertising injury" that was covered under the policy.

¶ 19 Pekin and defendants filed cross-motions for summary judgment, focusing on whether the allegations in the underlying complaint constituted "personal injury" or "advertising injury" under the terms of the policy. Specifically, defendants argued that the allegation that they "assumed operations" of Xactdose constituted covered offenses, including misappropriation of advertising ideas or style of doing business and wrongful invasion into the right of private occupancy of the factory. Defendants also asserted that the allegation of misrepresenting and withholding information vital to plaintiffs constituted the covered offense of infringement of copyright, title, or slogan.

¶ 20 In support of their motion for summary judgment, defendants relied on Koopman's affidavit for the proposition that Precision Dose used Xactdose's advertising ideas and capitalized on Xactdose's goodwill. Koopman attested that Precision Dose assumed the operations of Xactdose on or around June 24, 2003, and remained in the business of packaging, marketing, advertising, and distributing single-unit doses of liquid medication. In assuming those operations, Precision Dose took over Xactdose's marketing and advertising methods, manufacturing, general operations, and sales and distributions. Koopman stated that, like Xactdose, Precision Dose targeted its marketing and advertising toward pharmaceutical companies rather than the individual consumers of liquid medication. To his affidavit Koopman attached advertising brochures distributed by Xactdose in March 2003 and Precision Dose in July 2003 to show their similarity. Koopman attested that Precision Dose essentially made the Xactdose advertisement its own by removing any reference to Xactdose and replacing it with Precision Dose, "essentially stepping into

Xactdose's shoes." Koopman stated that the original brochure idea came from Xactdose, which Precision Dose assumed as part of its purchase of Xactdose's assets in 2003.

¶ 21    Pekin moved to strike Koopman's affidavit on the grounds that the facts set forth therein were in the possession only of defendants and that defendants failed to show that Pekin knew of a similarity in the marketing and operations of Xactdose and Precision Dose when Pekin denied coverage.

¶ 22    On February 3, 2011, the trial court struck Koopman's affidavit, denied defendants summary judgment, and granted Pekin summary judgment. In a nine-page, single-spaced opinion, the court held that Pekin owed defendants no duty to defend the underlying suit. This timely appeal followed.

¶ 23                                    ANALYSIS

¶ 24                A. Sufficiency of Defendants' Statement of Facts

¶ 25    Initially, we address Pekin's request that we ignore defendants' statement of facts as incomplete and fraught with misstatements. Illinois Supreme Court Rule 341(h)(6) (eff. July 1, 2008) requires that the statement of facts shall contain the facts necessary to an understanding of the case, stated accurately and fairly, without argument or comment, and with appropriate reference to the pages of the record. Considering that an insurer's duty to defend turns on the words used in an underlying complaint, we agree with Pekin that portions of defendants' statement of facts paraphrase the record inaccurately. However, with less egregious violations such as those here, we simply disregard the offensive portions of the statement of facts. See *Ziller v. Rossi*, 395 Ill. App. 3d 130, 138 (2009). We remind defendants' counsel that they are required to follow Rule 341(h)(6), and we admonish counsel to comply with the supreme court rules in the future.

¶ 26                           B. Standard of Review

¶ 27    Defendants appeal from the trial court's decisions to strike Koopman's affidavit and to grant Pekin summary judgment on the issue of whether Pekin owed defendants a duty to defend the shareholder suit. The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). "When, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005).

¶ 28    Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 597 (2004). The summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. *Adams*, 211 Ill. 2d at 43. However, summary judgment is a drastic means of disposing of litigation and should not be granted unless the

-7-

movant's right to judgment is clear and free from doubt. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

¶ 29    In reviewing a grant of summary judgment, this court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). If a party moving for summary judgment introduces facts that, if not contradicted, would entitle him to judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact. *Klitzka*, 348 Ill. App. 3d at 597 (citing *Hermes v. Fischer*, 226 Ill. App. 3d 820, 824 (1992)). We review *de novo* an order granting or denying summary judgment. See *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010).

¶ 30    "In a declaratory judgment action such as that presented here, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Wilson*, 237 Ill. 2d at 455.

¶ 31    A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the policy terms are clear and unambiguous, they must be given their plain and ordinary meaning; but if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer that drafted the policy. *Wilson*, 237 Ill. 2d at 455-56. Provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer. A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Wilson*, 237 Ill. 2d at 456. The insurer's duty to defend its insured is broader than its duty to indemnify (*Wilson*, 237 Ill. 2d at 456), and therefore the insurer may be obligated to defend against causes of action and theories of recovery that are not in fact covered by the policy and against allegations that are groundless, false, or fraudulent (*Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 716 (2010)).

¶ 32                              C. Koopman's Affidavit

¶ 33    Before granting Pekin summary judgment, the trial court struck Koopman's affidavit, a ruling that defendants claim was erroneous. The sufficiency of an affidavit in support of a motion for summary judgment is determined under Illinois Supreme Court Rule 191(a) (eff. July 1, 2002). Rule 191(a) provides that affidavits in support of or in opposition to a motion for summary judgment must be made on the personal knowledge of the affiant and must not consist of conclusions, but facts admissible in evidence, and must affirmatively show that

the affiant could testify competently thereto. Ill. S. Ct. R. 191(a) (eff. July 1, 2002). Ordinarily, the decision to strike a Rule 191 affidavit is within the sound discretion of the trial court. *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 402 Ill. App. 3d 513, 524 (2010). However, in this case, the trial court struck the affidavit on the ground that defendants had failed to timely inform Pekin of the affidavit's contents, and therefore Koopman's assertions had no bearing on whether Pekin correctly denied coverage when defendants tendered the defense. We agree with the parties that, in this unusual procedural context, the court's decision to strike the affidavit presents a question of law that we review *de novo*.

¶ 34 Pekin does not seriously dispute that Koopman's affidavit set forth facts that would trigger a duty to defend the underlying suit. Specifically, Koopman attested that Precision Dose derived its advertising materials from Xactdose's brochure, which arguably was a misappropriation of advertising ideas or style of doing business as well as infringement of copyright, title, or slogan. However, we conclude that the trial court correctly struck Koopman's affidavit on the ground that Pekin was not aware of those facts when it declined to defend the suit. While an earlier disclosure of the contents of the affidavit might have triggered a duty to defend, it appears that defendants waited to notify Pekin of the details of Koopman's conduct until after the time for presenting a defense had passed. Defendants did not disclose Koopman's affidavit until the parties had filed cross-motions for summary judgment in the declaratory judgment action.

¶ 35 1. "Eight Corners" Rule and Exceptions

¶ 36 Our supreme court has long held that an insurer's duty to defend an action brought against the insured is " 'determined solely by reference to the allegations of the complaint.' " (Emphasis omitted.) *Wilson*, 237 Ill. 2d at 457-58 (quoting *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52 (1987)). Illinois adheres to an "eight corners" analysis when determining a carrier's duty to defend, where the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage. *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010).

¶ 37 However, the supreme court recently pointed out that this is only a "general rule" to which there can be exceptions. *Wilson*, 237 Ill. 2d at 458. The court noted that, in *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017 (2008), the appellate court considered the allegations of the complaint, the third-party complaint, and the relevant language of the insurance policy in determining that the insurer owed a duty to defend. *Wilson*, 237 Ill. 2d at 460. The supreme court quoted with approval the following from *Holabird & Root*:

" '[C]onsideration of a third-party complaint in determining a duty to defend is in line with the general rule that a trial court may consider evidence beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action [citation]. *The trial court should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether*

-9-

*there is a duty to defend.* After all, the trial court need not wear judicial blinders and may look beyond the complaint at other evidence appropriate to a motion for summary judgment. [Citations.]' (Emphasis added.)" (Internal quotation marks omitted.) *Wilson*, 237 Ill. 2d at 460-61 (quoting *Holabird & Root*, 382 Ill. App. 3d at 1031-32).

¶ 38     The *Wilson* court also quoted with approval *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983), in which the appellate court affirmed a declaratory judgment in favor of an insurance company on the ground that the trial court could look beyond the underlying complaint in determining the duty to defend. The court in *Envirodyne Engineers, Inc.* stated the rationale for its holding as follows:

"[W]e find no support for Envirodyne's contention that the court may not look beyond the underlying complaint even in a declaratory proceeding where the duty to defend is at issue. It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions. [Citations.] The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit [citations] ***. If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding. *To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.*" (Emphasis added.) *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 304-05.

¶ 39     Thus, on a motion for summary judgment in a declaratory judgment action, when determining whether a duty to defend exists, the court is not limited to comparing the insurance policy to the allegations of the complaint but may consider evidence usually considered in ruling on a motion for summary judgment, so long as such evidence does not tend to determine an issue critical to the determination of the underlying lawsuit. See *Wilson*, 237 Ill. 2d at 462.

¶ 40                              2. True-But-Unpleaded-Facts Doctrine

¶ 41     Citing *Wilson* and cases like it, defendants argue that the trial court erroneously rejected Koopman's affidavit when determining whether Pekin owed a duty to defend. We disagree. The trial court correctly observed that "it is important to note that the rule in [*Wilson*] not be overstated; it is not a *requirement* to consider *any* material outside the underlying pleadings; it simply permits it." (Emphases in original.) Before *Wilson* was decided, the appellate court had occasionally considered the more difficult question of which extraneous materials may be considered and when. Nothing in *Wilson* suggests that these cases are no longer good law.

-10-

¶ 42 In *Shriver Insurance Agency v. Utica Mutual Insurance Co.*, 323 Ill. App. 3d 243, 251 (2001), Shriver Insurance Agency (Shriver) filed a declaratory judgment action against its insurer, Utica Mutual Insurance Company (Utica), after Utica declined to defend Shriver in an underlying lawsuit. Utica moved to dismiss Shriver's complaint in light of a policy exclusion, and, as in this case, the parties eventually filed opposing motions for summary judgment. Shriver attached an affidavit from its president as well as his letter sent to Utica informing it of the underlying action and the facts leading up to the lawsuit. The trial court granted Shriver's motion for summary judgment and found that Utica had a duty to defend Shriver because the letter constituted true but unpleaded facts known to Utica. *Shriver*, 323 Ill. App. 3d at 246-47.

¶ 43 On appeal, the *Shriver* court reiterated the true-but-unpleaded-facts doctrine: "[a]n insurer must defend only if the complaint alleges facts within or potentially within the coverage of the policy, unless the insurer *possesses knowledge* of true but unpleaded facts that, when taken together with the allegations in the complaint, indicate that the claim is within or potentially within the policy coverage." (Emphasis added.) *Shriver*, 323 Ill. App. 3d at 247. The court determined that the complaint in the underlying action alleged the type of risk that Utica intended to exclude from coverage. *Shriver*, 323 Ill. App. 3d at 249. Additionally, the court stated that it did not believe that the true-but-unpleaded-facts doctrine "was meant to be applied to situations such as existed in this case, *i.e.*, where the only extraneous facts the insurer possessed were supplied by the insured. In such a situation the insurer has no way of knowing whether the facts are true unless it conducts an independent investigation." *Shriver*, 323 Ill. App. 3d at 251. "Typically, in cases where the 'true but unpleaded facts' doctrine has been applied to show that an insurer had the duty to defend, the extraneous facts possessed by the insurer and known to be true were facts the insurer discovered during its own investigation of the underlying action." *Shriver*, 323 Ill. App. 3d at 251. To illustrate that the source of "true but unpleaded facts" is often the insurer's own investigation, the *Shriver* court mentioned *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill. App. 3d 446 (1980), and *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807 (1979):

"In [*La Rotunda*], the court determined that Royal Globe had a duty to defend where the results of its own investigation disclosed the true but unpleaded fact that all of the land in question was not used as a junkyard or refuse dump. Therefore, smoke from the land, which caused a driving accident on a neighboring road, might have come from the vacant part of the land and not the junkyard, making the business exclusion in Royal Globe's policy inapplicable.

In [*Associated Indemnity*], the insurer, Insurance Company of North America (INA), knew that unpleaded facts related to it by Associated Indemnity were true. INA possessed a file containing documents produced in the underlying litigation that verified the truth of Associated Indemnity's facts. Also, INA knew the facts to be true because it was defending another party in the underlying action." *Shriver*, 323 Ill. App. 3d at 251-52 (citing *La Rotunda*, 87 Ill. App. 3d at 452, and *Associated Indemnity*, 68 Ill. App. 3d at 818-19).

¶ 44 *Shriver* teaches that unpleaded facts that the insured gives the insurer should be viewed

-11-

with suspicion when determining the duty to defend, because the insurer has no way of knowing whether the facts are true without conducting its own investigation or otherwise verifying the information independently. In this case, the parties have not directed us to any part of the record showing that Pekin investigated Koopman's allegations or was made aware of their truthfulness in some other way. In fact, the record suggests that Pekin denied coverage without any awareness of the events contained in Koopman's affidavit at all. The Koopman affidavit was properly stricken because the extraneous facts contained therein were supplied by defendants. See *Shriver*, 323 Ill. App. 3d at 251.

¶ 45      Moreover, the delay in defendants' disclosure of the information in Koopman's affidavit provided even more reason for striking it. In *Shriver*, the insured's president sent his letter describing the material events while the insurer was contemplating its duty to defend, but it appears in this case that defendants did not disclose the information about misappropriating the advertising materials until the cross-motions for summary judgment had been filed. The "eight corners" rule focuses on the complaint and the policy because the insurer must determine whether it has an obligation to defend at the outset of the litigation. *Travelers Insurance Cos. v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir. 1992). Where the insurer is unaware of the purported " 'true but unpleaded fact,' " that fact may not be considered in determining the duty to defend. *Konstant Products*, 401 Ill. App. 3d at 88. By delaying the disclosure of additional facts bearing on Pekin's duty to defend, defendants left Pekin without knowledge of true but unpleaded facts that, when taken together with the allegations in the complaint, indicated that the claims were potentially covered by the policy.

¶ 46                      3. Clarification of Ambiguous Pleading

¶ 47      Defendants cite *Millers Mutual Insurance Ass'n v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888 (1989), for the propositions that (1) plaintiffs' amended complaint was ambiguous and (2) the trial court should have considered Koopman's affidavit to clarify that ambiguity. In *Ainsworth Seed Co.*, the Appellate Court, Fourth District, on an appeal from a summary declaratory judgment, considered whether an insurer's duty to defend should be determined entirely upon the terms of the insured's policy and the underlying complaint or whether extrinsic facts could be admitted, so long as those facts did not impact the issues in the underlying action. Sophia Cross filed a personal injury action against Ainsworth Seed Co. (ASC) and certain named employees for their negligent design, installation, and construction of certain equipment that caused Cross's injury. Millers Mutual Insurance Association (Millers) issued a CGL policy to ASC and its employees. Millers filed a declaratory judgment action seeking a declaration as to its obligations in the underlying action. Millers asserted that certain hazard exclusions in the policy prevented coverage. The trial court granted ASC summary judgment. *Ainsworth Seed Co.*, 194 Ill. App. 3d at 889-90.

¶ 48      On appeal, to determine coverage, the reviewing court examined the allegations of the underlying complaint and the insurance policy as well as the affidavit of R. Clayton Ainsworth. In the affidavit, Ainsworth stated that the machine Cross was using was installed by a different company also named Ainsworth Seed Company, that the present ASC was not formed until three years later, and that the present ASC never owned or operated the machine

-12-

that injured Cross. Focusing on the sections of the insurance policy relating to hazard exclusions, the court concluded that Millers was not obligated to defend ASC and its employees in the Cross action. *Ainsworth Seed Co.*, 194 Ill. App. 3d at 893.

¶ 49 In *Ainsworth Seed Co.*, the ambiguity in the "confused pleadings" needing clarification, *i.e.*, the mistaken identity of the manufacturer of the equipment causing the injury in the underlying suit, was obvious and undisputed. Here, defendants have not explained what part of the amended complaint was confused and needed clarification. The cases are easily distinguished on the facts.

¶ 50 Here, Koopman's affidavit was produced not to clarify a confused pleading but rather to broaden the scope of the allegations in the amended complaint to trigger Pekin's duty to defend. We agree with Pekin and the trial court that Koopman's affidavit was properly stricken because the affidavit contained no "true but unpleaded facts" of which Pekin was aware.

¶ 51                          4. Notice Provision in Policy

¶ 52 We note that, in their reply brief, defendants suggest that Koopman's affidavit should not have been stricken because "there is seemingly no case law setting an arbitrary cutoff time for an insured's presentation to its insurer of facts supporting a duty to defend." Even assuming *arguendo* that this is true, defendants disregard the plain language of the policy itself, which presented an alternative basis for striking Koopman's affidavit. The undisputed facts in this case show that defendants' delay in presenting the information contained in Koopman's affidavit amounted to a breach of policy terms that explicitly set forth the insureds' duties in the event of an occurrence, offense, claim, or suit:

"a. You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when, and where the 'occurrence' or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.

b. If a claim is made or 'suit' is brought against any insured, you must:

(1) Immediately record the specifics of the claim or 'suit' and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit';

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement, or defense of the claim or

-13-

'suit'; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of the injury or damage to which this insurance may also apply.

    d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

¶ 53    In *Country Mutual Insurance Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303 (2006), the supreme court reaffirmed that an insured's breach of a policy's notice provision "will defeat the right of the insured party to recover under the policy." *Country Mutual*, 222 Ill. 2d at 312; see also *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 185 (2010). This result is grounded in the principle that notice clauses "impose valid prerequisites to insurance coverage" (*Country Mutual*, 222 Ill. 2d at 311) and is rooted in the well-settled principles that insurance contracts embody the agreement of the parties, that the terms of the policy constitute the scope of the insurer's liability, and that the insured must perform under those terms as a condition precedent to recovery (*Imperial Fire Insurance Co. of London v. Coos County*, 151 U.S. 452, 462 (1894)).

¶ 54    The notice provision at issue required defendants to "see to it that [Pekin is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim" and notify Pekin of "the nature and location of any injury or damage arising out of the 'occurrence' or offense." The policy further required defendants to cooperate with Pekin in the investigation, settlement, or defense of the claims. Thus, the policy explicitly imposed on defendants a duty to present Pekin with all available and relevant information regarding plaintiffs' suit. One could argue persuasively that such factual detail includes information bearing on whether Pekin owed a duty to defend.

¶ 55    A policy provision requiring notice "as soon as practicable" means that notice must be given "within a reasonable time." (Internal quotation marks omitted.) *Country Mutual*, 222 Ill. 2d at 311. Whether notice has been given within a reasonable time depends on the facts and circumstances of each case (*Country Mutual*, 222 Ill. 2d at 311-12), and the timeliness of an insured's notice to its insurer generally is a question of fact for the trier of fact (*Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 465 (2000)). That said, because policy notice provisions impose valid prerequisites to insurance coverage (*Country Mutual*, 222 Ill. 2d at 311), one could argue that, as a matter of law, defendants breached the contract and thereby forfeited their right to a defense when they waited until the summary judgment stage of Pekin's declaratory judgment action before notifying Pekin of details bearing on its duty to defend. Here, there is no dispute that, when the complaint and amended complaint were filed in the underlying suit, defendants had all the information contained in Koopman's affidavit, yet they did not share it with Pekin. In fact, in the affidavit, Koopman attested that he was "personally familiar with both companies, and knowledgeable about each of their advertising and marketing practices."

¶ 56    It is apparent that defendants breached the notice provision by failing to timely present Pekin with the facts set forth in Koopman's affidavit. Therefore, the trial court did not err in striking the affidavit.

¶ 57                    D. Amended Complaint

¶ 58    Defendants contend that, even if Koopman's affidavit is excluded, the amended complaint triggered a duty to defend. Specifically, defendants cite the allegation that "Precision Dose began *assuming operations* of the Xactdose packaging factory" and the prayer for relief seeking "a constructive trust on any profits or income [defendants have] received as a result of [their] *wrongful* conduct." (Emphases added.) Defendants argue that these allegations amounted to covered "advertising injuries" arising from (1) "misappropriation of advertising ideas or style of doing business" and (2) "infringement of copyright, title, or slogan." Defendants also argue that the allegations amounted to covered "personal injuries" arising from "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor."

¶ 59    As discussed, in a declaratory judgment action such as that presented here, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. *Wilson*, 237 Ill. 2d at 455. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Wilson*, 237 Ill. 2d at 455.

¶ 60    The alleged conduct, rather than the manner in which the claim is labeled in the underlying complaint, determines whether the insurer has a duty to defend. *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1059 (2010). However, it is "the actual complaint, not some hypothetical version, that must be considered." (Internal quotation marks omitted.) *Steadfast Insurance Co.*, 359 Ill. App. 3d at 761.


¶ 61         1. Misappropriation of Advertising Ideas or Style of Doing Business

¶ 62    Defendants argue that the allegation that "Precision Dose began assuming operations of the Xactdose packaging factory" was a covered "advertising injury" arising from the "misappropriation of advertising ideas or style of doing business." Defendants contend that taking over the factory qualified as a misappropriation of Xactdose's "style of doing business" in that defendants (1) continued to package the same kind of product (liquid medication) in the same kind of packaging (single-dose units), (2) used a name similar to Xactdose (Precision Dose), (3) earned a profit by promoting Megestrol, and (4) attempted to negotiate contracts with Alpharma and some of Xactdose's other former clients.

¶ 63    However, the policy characterized an "advertising injury" as being caused by an offense committed in the course of *advertising* goods, products, or services. Even construing the amended complaint broadly in favor of coverage, the allegation that Precision Dose assumed operations of the factory encompassed only the *manufacture* of products and did not refer to advertising in any way. Defendants incorrectly assert that the amended complaint alleged that Precision Dose misappropriated Xactdose's entire business, including advertising and the style of doing business. The "assuming operations" allegation referred to only Xactdose's *factory*. Had the amended complaint alleged that Precision Dose assumed operations of Xactdose, the *business*, the claim might have been within the policy's advertising injury

-15-

coverage and triggered Pekin's duty to defend.

¶ 64                           2. Infringement of Copyright, Title, or Slogan

¶ 65    Defendants alternatively argue that the allegation that "Precision Dose began assuming operations of the Xactdose packaging factory" was a covered "advertising injury" arising from the "infringement of copyright, title, or slogan." The "infringement" argument and the "misappropriation" argument are flawed for the same reason: even under the broadest interpretation, assuming the operation of a factory does not create the reasonable inference that defendants also took over Xactdose's marketing or any type of advertising. We agree with the trial court that the "assuming operations" allegation was not a covered advertising injury arising from the infringement of copyright, title, or slogan.

¶ 66                                        3. Wrongful Invasion

¶ 67    Finally, defendants argue that the allegation that Precision Dose was "assuming operations" of Xactdose's factory was a covered "personal injury" arising from "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor."

¶ 68    The policy characterized "personal injury" as being caused by "an offense arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by you or for you." Defendants argue that the assumption of operations of the factory itself was an invasion of plaintiffs' right to private occupancy of the factory. Pekin concedes that alleged violations of the personal rights incidental to ownership of property, such as trespass, nuisance, or other interference with possession, arguably fall within the definition of wrongful entry or eviction or other invasion of the right of private occupancy. Pekin further concedes that this personal injury is not limited to natural persons but extends to the actions of corporate entities. See *Supreme Laundry Service, L.L.C. v. Hartford Casualty Insurance Co.*, 521 F.3d 743, 747-48 (7th Cir. 2008).

¶ 69    However, Pekin argued–and the trial court agreed–that Pekin owed no duty to defend a personal-injury claim because the allegation of Precision Dose "assuming operations" of the factory was not an allegation of any wrongful conduct on the part of any of the defendants. The court concluded that neither the allegations common to all claims nor the allegations directed against defendants in the three counts of breach of fiduciary duty characterized "assuming operations" as wrongful. Pekin further argues on appeal that plaintiffs' "request for an accounting of the sale of Xactdose's assets has nothing to do with Precision Dose or its assumption of Xactdose's operations." We agree.

¶ 70    The amended complaint alleged that defendants breached their fiduciary duty to plaintiffs by falsely painting a bleak financial picture of Xactdose and failing to inform plaintiffs of a potential new source of business. Plaintiffs then alleged that defendants took over the business operations, including the physical plant, but plaintiffs did not allege that the conduct was wrongful.

¶ 71    The "assuming operations" allegation lacked a nexus to plaintiffs' prayers for relief, which shows that the allegation was necessary only to state the chain of events. The amended complaint sought compensatory damages, punitive damages, and the costs of litigation, none of which were related to the parties' relative rights regarding possession of the factory. The other prayers for relief in the amended complaint sought a constructive trust and "an immediate accounting of the $1.4 million sale of assets and all other Xactdose winding up activities." A court may impose a constructive trust to avoid unjust enrichment: when one obtains money to which he is not entitled, under circumstances such that in equity and good conscience he ought not retain it. *Hensley Construction, LLC v. Pulte Home Corp.*, 399 Ill. App. 3d 184, 193 (2010). A constructive trust is an equitable remedy that will be imposed on proceeds of a breach of fiduciary duty. *Baumgartner v. First Church of Christ, Scientist*, 141 Ill. App. 3d 898, 908 (1986). Plaintiffs sought a constructive trust on any profits wrongfully obtained by defendants after they assumed operation of the factory, but the prayer for relief was devoid of any claim for possession of the factory. Even construing the amended complaint broadly in favor of coverage, and regardless of whether defendants were within their rights to assume operations of Xactdose's factory after the sale, the amended complaint contained no claim pertaining to wrongful entry into or eviction from the factory. We conclude that assuming operations of the factory after withholding business information did not qualify as the wrongful eviction from, wrongful entry into, or invasion of plaintiffs' right of private occupancy of the factory. Therefore, we affirm the summary judgment entered for Pekin.

¶ 72                                    CONCLUSION

¶ 73    For the reasons stated, we affirm the summary judgment for Pekin entered in the circuit court of Winnebago County.

¶ 74    Affirmed.

-17-