2016 IL App (1st) 140862

THIRD DIVISION
July 20, 2016

No. 1-14-0862

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| WEST VAN BUREN, LLC, an Illinois Limited Liability | ) | |
| Company, and 933 VAN BUREN CONDOMINIUM | ) | No. 12 CH 2654 |
| ASSOCIATION, an Illinois Not-For-Profit Corporation, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (West Van Buren, LLC, an Illinois Limited Liability | ) | |
| Company, Defendant and Counterplaintiff-Appellant). | ) | The Honorable |
| | ) | Rodolfo Garcia, |
| | ) | Judge Presiding. |
| | ) | |

JUSTICE LAVIN delivered the judgment of the court, with opinion.[*]
Presiding Justice Mason concurred in the judgment and opinion.
Justice Pucinski dissented from the judgment, with opinion.

**OPINION**

¶ 1     This case involves an insurance coverage dispute. The insurance company filed a

declaratory judgment action seeking a determination that it had no duty to defend the additional

insured in an underlying lawsuit. The parties filed cross-motions for summary judgment, and the

trial court ultimately ruled in favor of the insurance company. The additional insured now

_____

[*] This case was reassigned to Justice Lavin in mid-March 2016.

appeals contending the insurance company had a duty to defend it in the underlying lawsuit. We disagree and therefore affirm the trial court's judgment in favor of the insurance company.

¶ 2                                    BACKGROUND

¶ 3    In 2002, West Van Buren LLC (Developer) constructed a condominium development at 933 W. Van Buren Street, Chicago, Illinois. The Developer subcontracted installation of the roof to Total Roofing and Construction Services, Inc. (Total Roofing). The subcontract provided that Total Roofing would insure and indemnify the Developer against liability for Total Roofing's work. Total Roofing, which constructed the roof in 2002, obtained a commercial general liability policy through Westfield Insurance Company for occurrence-based coverage (between February 6, 2001, and February 15, 2005).[1] The policy offered coverage for "occurrences," defined as accidents, and also for "property damage." In addition, the policies also provided for a duty to defend in the event of a lawsuit. Consistent with the subcontract, the relevant policies listed the Developer as an additional insured.

¶ 4    About a year after construction, the 933 Van Buren Condominium Association (Condo Association) took charge of the building. Shortly thereafter, the Condo Association claimed construction defects in the roof caused water to infiltrate into the building and individual condominium units and also caused damage to personal and other property in the condominium units. The Condo Association demanded that the Developer reconstruct the roof. The Developer refused, and the Condo Association then paid for the repair work that cost in excess of $309,000.

---

[1] West Van Buren concedes that the first and fourth policies are not implicated in this case. The second policy was in effect during Total Roofing's construction of the roof at the development. The third policy was in effect during the date of loss assigned by Westfield Insurance. The parties have not made clear which policy applies. It is of no moment because the policies both define "property damage" and "occurrence" in the same manner, and those definitions are at the heart of this appeal. For the sake of simplicity, we refer to these two policies as the "policy" unless otherwise indicated.

¶ 5    The Condo Association subsequently sought reimbursement for those expenses. In October 2010, the Developer received a mediation request for the aforementioned alleged repair work. The Developer, claiming it was an additional insured under the policy, notified Westfield Insurance and requested a defense for the mediation. Westfield Insurance declined to offer a defense, citing a number of reasons under the policy.

¶ 6    The mediation fell through, and on August 8, 2011, the Condo Association sued the Developer and Total Roofing,[2] among others, in a multi-count complaint[3] for breach of warranty, violating the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West [Insert Year])), fraud, and breach of the implied warranty of habitability. The complaint asserted that water infiltrated the common elements and individual units. It noted that each condominium purchase agreement provided by the Developer warranted against any defects in material and workmanship in the common elements of the building. Yet, when these units were sold, they allegedly "contained a number of hidden and latent defects that West Van Buren [the Developer] *intentionally* failed to disclose, including but not limited to: a) defects in the roofing system and the individual roofing components so as to allow water infiltration into the Condo Building *** and b) West Van Buren's failure to construct the Condo Building in substantial conformity with the plans and specifications." (Emphasis added.) The complaint also asserted the Developer fraudulently covered up hidden and latent defects, also alleging:

---

[2]The initial complaint named "Total Roofing Control" as a defendant. In an amended complaint the Condo Association corrected the named party as "Total Roofing & Construction Services, Inc." For the sake of simplicity, we refer to the initial complaint, as the two are identical. See *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 329 (1998) (generally, an insurer's duty to defend is triggered by actual notice of the underlying suit). Moreover, both parties on appeal rely on the initial complaint in determining whether a duty to defend arose. We note that the Condo Association also filed a second-amended complaint on October 11, 2012, adding a negligence count against only a roof consulting firm.

[3]The complaint actually included five counts. Count III, however, was for breach of fiduciary duty only against three members of the Developer's board.

"Moreover, individual unit owners experienced damage to personal and other property as a result of the water infiltration." The complaint asserted that the defendants were responsible for $300,000 in damages and that had the unit owners been aware of the concealed defects, they would not have purchased their units or at least would have negotiated a better purchase price.

¶ 7   Within days of this lawsuit, the Developer notified Westfield Insurance and tendered the defense, but Westfield declined to undertake it. Westfield Insurance nonetheless agreed to defend Total Roofing under a reservation of rights. Westfield Insurance subsequently filed the present declaratory action for a determination that it owed no duty to defend or indemnify the Developer as the additional insured in the underlying case.[4] The Developer, in turn, filed a counterclaim alleging a duty to defend because the underlying complaint contained allegations of personal property damage that were within the policy's coverage, and based on estoppel. Westfield Insurance denied that the underlying complaint alleged a covered occurrence.

¶ 8   The parties filed cross-motions for summary judgment in the declaratory judgment action.[5] At the hearing on the motions, Westfield Insurance acknowledged the underlying complaint alleged personal property damage but argued that the Condo Association lacked standing to assert such claims on behalf of individual unit owners.

¶ 9   The circuit court initially granted summary judgment for this declaratory action to the Developer, but upon a motion to reconsider by Westfield Insurance, the court subsequently vacated its judgment and granted summary judgment to Westfield Insurance. The court concluded that since there was no duty to defend, then there was no duty to indemnify. The Developer filed this timely appeal.

---

[4]Westfield Insurance filed the present declaratory action against the Developer on January 25, 2012. More than a year later, on September 10, 2013, Westfield Insurance also filed a declaratory judgment action against Total Roofing claiming it owed no duty to defend or indemnify its insured.
   [5]The Condo Association filed a response that adopted the Developer's arguments and requested that the court grant the Developer's summary judgment motion.

¶ 10                                    ANALYSIS

¶ 11    Summary judgment is properly granted when the pleadings, depositions, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West

2014). Where parties file cross-motions for summary judgment, they agree the case presents only

questions of law, and they invite the trial court to decide these legal questions on the basis of the

record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Our standard of review is *de novo*, and we may

affirm on any basis in the record regardless of whether the trial court relied on that basis or its

reasoning was correct. *Id*. ¶ 30; *Chicago Title Insurance Co. v. Bass*, 2015 IL App (1st) 140948,

¶ 13. The construction of an insurance policy, which presents a question of law, is likewise

subject to *de novo* review. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d

352, 360 (2006).

¶ 12    The Developer argues in the main that Westfield Insurance had a duty to defend the

Developer in the underlying action[6] and the trial court therefore erred in granting summary

judgment in favor of Westfield Insurance. An insurance company's obligation to represent its

insured depends on the allegations of the underlying complaint and the provisions of the

insurance policy. *Diamond State Insurance Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 476

(1993). The complaint must be liberally construed and all doubts resolved in favor of coverage

---

[6]Westfield Insurance notes in its statement of facts that the underlying lawsuit was dismissed on October 20, 2014. We have reviewed the Cook County circuit court clerk's records, of which we may take judicial notice (see *In re Application of the County Treasurer and ex officio county collector*, 356 Ill. App. 3d 1102, 1111 (2005)), but they do not make clear what happened between the multiple parties in the underlying lawsuit. Nonetheless, our records show there is currently a case pending in the appellate court between the Developer (the appellant and cross-appellee) and Total Roofing (the appellee and cross-appellant), arising from cross-claims filed in the underlying litigation. According to their briefs, the underlying lawsuit by the Condo Association is currently no longer being actively litigated. The Condo Association claims were dismissed, some with prejudice and some without.

for the insured. *Id*. A duty to defend will arise when the allegations of the underlying complaint may potentially come within the coverage of the policy. *Id*. at 476-77.

¶ 13    Thus, in order to address this matter, we turn to both the underlying complaint and the language of the insurance policy itself. The general rules governing the interpretation of contracts also govern the interpretation of insurance policies. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 24. As such, a court's primary objective in analyzing an insurance policy is to ascertain and give effect to the parties' intentions as expressed by the policy language, which we construe in its plain and ordinary meaning. *Swiderski Electronics, Inc.*, 223 Ill. 2d at 362-63. We view the policy as a whole so as to give effect to every provision if possible. *Id*. at 362. As a result, if the policy language is unambiguous, generally the policy will be applied as written. *Lay*, 2013 IL 114617, ¶ 24.

¶ 14    At the outset, we observe that throughout its brief, the Developer cites a copy of the underlying complaint attached to the appendix. Rules 341(h)(6) and (7), however, require that an appellant cite the record. See Ill. S. Ct. R. 341(h)(6), (7) (eff. eff. Jan. 1, 2016). The Illinois Supreme Court Rules are not suggestions; they have the force of law and must be complied with. *Estate of Prather v. Sherman Hospital Systems*, 2015 IL App (2d) 140723, ¶ 32. Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal should the circumstances warrant. *Id*. Given the force that the underlying complaint carries in this case, it would behoove the Developer to accurately cite it in the record on appeal. Nonetheless, we conclude the location of the complaint is easily ascertainable and thus we proceed in our review.

¶ 15    We also must note that it is questionable whether the appellant was even an additional insured under the policy. The policy stated, "To the extent of the Named Insured's ongoing

6

operations, the coverage afforded to the Additional Insured which may be imputed to the Additional Insured." This sentence is unclear. We find the only reasonable construction is that the policy provided that the additional insured would be covered "to the extent of the Named Insured's ongoing operations." Here, according to the underlying complaint, the Condo Association discovered the water infiltration and leaking in 2003, which was about one year after the roofing was installed. The fact that the roof was seemingly complete at the time of the discovered leak would mean the subcontractor's "operations" had ended and so too had the Developer's status as an additional insured. This has been perhaps left unexplored because discovery was stayed during the declaratory action. We proceed in our review because even assuming the Developer was an additional insured, we conclude the complaint and policy unequivocally authorize the trial court's result.

¶ 16    Here, the policy at issue defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy also defined "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

¶ 17    As stated, the complaint alleges the Developer breached contractual warranties and also committed fraud in selling the condo units because it intentionally concealed hidden defects in the roofing system and the individual roofing components "so as to allow water infiltration into the Condo Building." See *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 747 (2008) (implied warranty of habitability is contractual in character). In other words, according to the complaint, the Developer failed to properly install the roof system and failed to

7

correct the defect. The allegation of intentional conduct was incorporated in all counts of the complaint, and general negligence of the Developer was not alleged.

¶ 18    Analyzing the complaint in light of the policy, we conclude Westfield Insurance had no duty to defend the Developer in the Condo Association's underlying action for the following three reasons. First, the policy essentially requires an accidental event to trigger coverage, yet there is nothing accidental alleged in the complaint. The complaint either focuses on the intentional bad acts of the Developer or nonfortuitous events, like the resulting damage to the condo building due to shoddy workmanship, of which the Developer was allegedly aware. See *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 42, 54 (2005) (there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work and where the damages claimed are the natural and ordinary consequences of defective workmanship); see also *Stoneridge Development Co.*, 382 Ill. App. 3d at 752 (same); *Crawford Laboratories, Inc. v. St. Paul Insurance Co. of Illinois*, 306 Ill. App. 3d 538, 544 (1999) (an accident by its very nature contemplates an event that is unforeseen and neither intended nor expected). Although the dissent states the failure to do something (like properly construct a roof) can constitute an accident, this is not supported by the bulk of case law. See *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 42, 54 (2005) (there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work and where the damages claimed are the natural and ordinary consequences of defective workmanship); see also *Stoneridge Development Co.*, 382 Ill. App. 3d at 752 (same); *Crawford Laboratories, Inc. v. St. Paul Insurance Co. of Illinois*, 306 Ill. App. 3d 538, 544 (1999) (an accident by its very nature contemplates an event that is unforeseen and neither intended nor expected); but see *Milwaukee Mutual Insurance Co. v. Larsen*, 2011 IL

App (1st) 101316, ¶ 28 (faulty window system that allegedly damaged personal property deemed possible occurrence, in part due to negligence). Any alleged damage to the common or personal property was not an accident and therefore not the result of any occurrence. Thus, those allegations in the underlying complaint do not potentially fall within the policy coverage. See *State Farm Fire & Casualty Co. v. Tillerson*, 334 Ill. App. 3d 404, 409 (2002).

¶ 19    Second, the allegations of the complaint likewise do not fall within the definition of property damage under the policy's plain language. In the seminal case, *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 308 (2001), our Illinois Supreme Court held that "physical" injury occurs when property is altered in appearance, shape, color or in other material dimension, and does not take place when an economic injury occurs, such as the diminution in value. Yet, the allegations in the Condo Association's underlying complaint sought only to hold the Developer responsible for the shoddy workmanship of its roofing subcontractor. The complaint sought damages of some $300,000 for repair and remediation of the roof and also alleged that had the unit owners known of the defects, they either would not have purchased the condo units or would have negotiated the price. As such, these damages and the allegations related only to diminished value and economic harm. However, as the court in *Eljer* observed, where the language of an insurance policy explicitly requires physical injury, it cannot be construed to provide coverage on the basis of loss or diminished use simply resulting from the failure of a component to perform as promised. *Id*. at 311. Defective work and products are purely economic losses. *Id*. at 314; see also *CMK Development Corp. v. West Bend Mutual Insurance Co.*, 395 Ill. App. 3d 830, 841 (2009) (no coverage for homeowners pursuing a breach of contract claim for loss due to repair or replacement of defective work or diminished home value); *Viking Construction Management, Inc.*, 358 Ill. App. 3d at 54-56 (no property damage

where allegations in underlying complaint point to repair and replacement of defective product or construction). Otherwise, the policy would function as a performance bond. *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 311.

¶ 20    Third, in reaching the above-stated conclusions, we must reject the Developer's argument that the underlying complaint triggered a duty to defend because the complaint alleged actual physical harm to personal property. While construction defects that damage something other than the project itself *can* constitute an occurrence and property damage (see *Stoneridge Development Co.*, 382 Ill. App. 3d at 752-53), they do not in this case. We agree with the trial court that these allegations were meant to simply bolster the contention that water infiltration generally occurred and caused damages. They do not trigger potential coverage under the policy. The individual condo unit owners themselves were not parties to the complaint, and the Condo Association did not purport to act on behalf of any individual condo unit owners. See 765 ILCS 605/9.1(b) (West 2002) (condo board can act in representative capacity as to matters involving "the common elements or more than one unit"). Contrary to the dissent's assertion, the complaint did not seek damages for any personal property damage. In addition, we note that while we confine our analysis to the allegations in the initial complaint, we find it instructive that even the second-amended complaint (and third complaint filed) did not add as parties the individual condo unit owners or identify these owners and their specific claims for damages. As Westfield Insurance notes, "factual allegations certainly are important to a coverage determination, but only if those allegations are directed to a theory of recovery." *ISMIE Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC*, 397 Ill. App. 3d 964, 971 (2009). Moreover, we cannot read into the complaint something that is not there, but rather we are confined to what was actually alleged. See *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1063 (2010). We do not

believe a free-standing reference to a fact, that is not attached to any particular theory of recovery or particular party in the complaint, can trigger a duty to defend. See *Acuity v. Lenny Szarek, Inc.*, 128 F. Supp. 3d 1053, 1059-62 (2015) (analogous facts and finding same); *cf*. *Larsen*, 2011 IL App (1st) 101316, ¶ 20-21 (duty to defend in defective construction even though complaint did not expressly describe damages to personal property).

¶ 21    This case is similar to *Diamond State*. There, the State's underlying complaint against Chester-Jensen (a refrigeration and heating manufacturer) sought damages for Chester-Jensen's role in a failed air-conditioning system installed in the Thompson Center building. The State's complaint alleged breaches of contract and warranty, claiming economic damages and that the defective system injured the employees who became ill or otherwise lost time from work because of the excessive heat in the building. In affirming that there was no duty to defend and in analyzing the aforementioned allegations under the policy provision on bodily injury, the appellate court stated:

> "[Chester-Jensen's] proposed interpretation would distort the meaning of this provision and extend its reach so as to provide coverage for any liability where bodily injury is a tangential factor. It is manifest that the core of the State's claim for damages against Chester-Jensen is a claim for its economic losses. The fact that the State's claim for its economic losses as a result of diminished productivity may have been occasioned in part by the illness of its employees does not transmute its economic claim for which it seeks recovery from Chester-Jensen into one for 'bodily injury.' " *Diamond State*, 243 Ill. App. at 477-78.

This court noted the State did not bring the action on behalf of the employees or seek recovery for them on account of their illness or bodily injury and held there was no property damage

11

either. See also *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 964 (1991) (finding same, and that allegations regarding injured employees not offered for recovery but as evidence of failed air system).

¶ 22    Likewise, in this case the Condo Association's allegations of personal property damage were not offered for the purposes of recovery. These allegations were purely tangential to the Condo Association's claim for damages for repair and remediation of the roof. Further, even if the Condo Association sought to recover amounts attributed to property damage sustained by individual unit owners,[7] such amounts, *vis-a-vis* the Condo Association, are economic losses and not property damage. As a result, the trial court properly disregarded these allegations in determining Westfield Insurance's duty to defend. See also *id.* For the reasons stated, the underlying complaint, even liberally construed in the Developer's favor, does not offer allegations towards a theory of recovery that fits within the potential coverage of the policy. In affirming that there was no potential coverage, we find no need to examine the exclusions in this case. See *id.* at 966.

¶ 23    In an effort to save itself, the Developer appears to argue that Westfield Insurance should have raised the issue of "standing" as an affirmative defense in the underlying lawsuit by the Condo Association. Had there been a duty to defend, the Developer's argument might make sense. See *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007) (a reviewing court is entitled to have the issues on appeal clearly defined and cohesive legal argument presented). As there was no duty to defend, we must disregard this circular argument. Moreover, the analysis above makes clear that the issue does not necessarily involve standing but the more nuanced consideration of whether the underlying complaint sufficiently raised a theory of recovery together with supporting facts that trigger potential coverage under the insurance

---

[7]Tellingly, counsel for the Condo Association refused to answer the trial court's question on this point.

policy. While the Condo Association might have had the capacity to represent the individual unit owners, nowhere in the complaint did it purport to do so.

¶ 24    Therefore, we must also reject the Developer's related argument that our determination about "standing" has a preclusive effect as to the underlying lawsuit. The Developer cites legal principles from *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187 (1976), which was also a duty to defend case in which an underlying lawsuit alleged alternative counts of intentional and negligent conduct. The court for the declaratory action in *Peppers* had concluded the injury at issue was intentionally inflicted, but the supreme court determined this finding on an "ultimate fact" was premature and might preclude recovery under other theories in the underlying lawsuit. *Id.* at 197. The Developer appears to draw an analogy here as to "standing." We repeat that the issue in this case is more nuanced than the Developer acknowledges, and determining whether a complaint triggers a duty to defend with its allegations is far different from drawing a conclusion on an issue of fact. This argument is also questionable given that the underlying complaint is no longer being actively litigated. Regardless, "standing" is not a factual issue but a legal one, and thus the *Peppers* principle cited by the Developer is demonstrably inapplicable.

¶ 25    Based on the foregoing, we also conclude the trial court did not err in granting Westfield Insurance's motion to reconsider the trial court's initial judgment in favor of the Developer. The Developer argues the trial court granted the motion to reconsider on a basis not raised in the motion. We disagree. The motion to reconsider raised a number of issues, but significantly incorporated Westfield Insurance's legal memorandum supporting summary judgment. The initial trial court judgment in favor of the Developer clearly was the product of a misapplication of the law, and the trial court also expressed on the record that it did not fully analyze the present case when it granted the initial summary judgment, thus warranting correction. *Stevens v. Village*

*of Oak Brook*, 2013 IL App (2d) 120456, ¶ 37 (a court has the inherent authority to reconsider and correct its rulings, and this power extends to interlocutory rulings as well as to final judgments); *Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 16 (2010) (noting standards for motions to reconsider, and further that a trial court may deny a motion for summary judgment and later change its position and grant the same motion).

¶ 26    Having determined there was no duty to defend the Developer in the underlying action, we also affirm the trial court's determination that there was no duty to indemnify. See *Gust K. Newberg Construction Co.*, 218 Ill. App. 3d at 966. We disregard the Developer's request to stay the indemnity issue. The Developer offered no legal citation to support its request, thus waiving it. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (points not argued are waived). Furthermore, although a court should refrain from adjudicating issues of fact in an insurance declaratory action that will have a preclusive effect in the underlying case (see *United States Fidelity & Guaranty Insurance Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533, 537 (1994) (citing *Murphy v. Urso*, 88 Ill. 2d 444, 455 (1981))), nothing in the trial court's determination that the Condo Association's complaint did not allege "property damage" within the meaning of the policy foreclosed the litigation of any issue of fact relevant to the Developer's liability for faulty workmanship. And, in any event, because the Condo Association's claims are no longer pending, the request is moot.

¶ 27                                    CONCLUSION

¶ 28    We affirm the judgment of the circuit court granting summary judgment in favor of Westfield Insurance.

¶ 29    Affirmed.

¶ 30    JUSTICE PUCINSKI, dissenting.

¶ 31    Regretfully, I cannot join in the majority's decision, as the majority's rationale and holding are against several well-established principles and rules of law in the area of insurance defense.

¶ 32    First, the majority analyzes the underlying complaint and the policies to determine whether there is in fact coverage, which is appropriate only at a later stage when determining indemnity. In reviewing the threshold matter whether there is a duty to defend, we examine the underlying complaint and the insurance policies to determine whether there is the possibility of recovery under the policies, not whether in fact there is indeed coverage. As has been long established, the duty to defend is much broader than the duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). The duty-to-defend threshold is "minimal"; the complaint need present only "a possibility," not probability, of recovery under the policy. *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 960 (1991). "The duty to defend is much broader than the duty to indemnify because the duty to defend is triggered if the complaint potentially falls within a policy's coverage, whereas the duty to indemnify is triggered only when the resulting loss or damage actually comes within a policy's coverage." (Emphases omitted.) *Country Mutual Insurance Co. v. Bible Pork, Inc.*, 2015 IL App (5th) 140211, ¶ 16 (citing *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 741 (2008)).

¶ 33    The majority closely parses the underlying complaint and construes the insurance policy not only narrowly but also against the insured to conclude there is no duty to defend. The correct analysis actually is to do the opposite.

¶ 34    According to the majority, "the policy essentially requires an accidental event to trigger coverage, yet there is nothing accidental alleged in the complaint," thus ostensibly arguing that

15

the allegations of the underlying complaint are not potentially within coverage for an "occurrence." *Supra* ¶ 18. The majority reasons that "[a]ny alleged damage to the common or personal property was not an accident and therefore not the result of any occurrence." Actually, the policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The second amended complaint in the underlying Association lawsuit alleges that there were construction defects in the roofing of the development, which over time resulted in water infiltrating into the building, individual condominium units, "and other property," including damage to "personal and other property" within the condominium units. The Association's second amended complaint also alleges that the water infiltration was caused by "the failure to complete the roofing system under the patio concrete pavers and the failure to coat the top layer of fiberglass with hot asphalt." As a result of that failure, "any water that accumulated over the roof membrane for a long period of time caused water to bleed through the existing roof membrane." I do not read the word "accident" in the policy definition of an occurrence as to exclude failures to perform certain acts. Further, the policy definition of an occurrence explicitly includes "continuous or repeated exposure to substantially the same general harmful conditions," which is what is alleged.

¶ 35     The majority also concludes that the allegations of the Association lawsuit "do not fall within the definition of property damage under the policy's plain language," and instead "sought only to hold the Developer responsible for the shoddy workmanship of its roofing subcontractor." *Supra* ¶ 19. The majority further finds that the Association lawsuit alleged only economic damages for the repair of the roof, and not property damage. But the Association's second amended complaint does allege property damage under the policies. The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use

16

of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." The second amended complaint in the underlying Association lawsuit alleges that the construction defects in the roofing resulted in water infiltrating into the building into individual condominium units, "and other property," including damage to "personal and other property" within the condominium units. The complaint thus alleged "[p]hysical injury to tangible property" that is within primary coverage of Westfield's policies. I note that at the hearing on the motions below, Westfield acknowledged that the Association complaint alleged damage to personal property. Westfield chose to argue instead that the Association did not have standing to assert these claims for damage to the personal property of the condominium unit owners.

¶ 36    The majority finds that the allegations in the Association lawsuit "were meant to simply bolster the contention that water infiltration generally occurred and caused damages," meanwhile conceding that allegations of construction defects that damage something other than the project itself can constitute an occurrence and property damage. The majority minimizes the allegations of property damage to the personal and other property of the unit owners as "purely tangential" to the Association's claim for damages for repair and remediation of the roof. The majority's only citation to support this "purely tangential" analysis of the allegations in the underlying complaint is to *Diamond State*, but *Diamond State* did not cite any authority for this lone statement. See *Diamond State*, 243 Ill. App. 3d at 477 ("Appellant's proposed interpretation would distort the meaning of this provision and extend its reach so as to provide coverage for any liability where bodily injury is a tangential factor."). I can find no other reported Illinois case that has used such an analysis. Also, *Diamond State* is not even on point because it involved purely economic losses as a result of the diminished productivity of the insured's workers under

a claim for bodily injury. In this case we are presented with a claim for property damage, not bodily injury, and we are presented with allegations seeking damages for property damage, not purely economic loss. The fact that monetary damages are sought to also repair the roof does not transform this case into an economic loss case. The damages alleged are property damages, which include alleged property damage to the personal and other property of the individual condominium unit owners.

¶ 37    An insurer's duty to defend does not hinge on the draftsmanship in the underlying complaint of the relative amount of damages sought for particular injuries, and clearly alleged allegations of property damages are not disregarded as "purely tangential" to other allegations. " 'The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.' " *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 361 (2003) (quoting *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007 (2000)). "[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy." *Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d at 1007. " 'The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy.' " *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022 (2008) (quoting *Illinois Emcasco Insurance Co.*, 337 Ill. App. 3d at 361). See also *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461.

¶ 38 Further, " '[a]s the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured.' " *Holabird & Root*, 382 Ill. App. 3d at 1023 (quoting *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963 (2005)). Under Illinois law, even one potentially viable theory of recovery is enough to trigger the duty to defend. See *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769, ¶ 7 (there is a duty to defend even if only one of several alleged theories of recovery falls within potential coverage).

¶ 39 I also disagree with the majority's analysis of the standing issue. The majority dismisses the Developer's argument regarding standing as "circular" and contends that the real issue is the "more nuanced consideration of whether the underlying complaint sufficiently raised a theory of recovery." *Supra* ¶ 23. But the majority makes the same argument as Westfield, that the individual unit owners were not parties to the Association lawsuit and that the Association did not purport to act on behalf of the individual unit owners. Whether an individual or entity is a proper party to assert rights is indeed an issue regarding standing, and the Association did not have to plead or prove its own standing. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010) ("[L]ack of standing is an affirmative defense, which is the defendant's burden to plead and prove."). Section 9.1(b) of the Illinois Condominium Property Act explicitly provides that the board of managers of a condominium association "shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2002). This issue is thus a red herring. While the majority uses the issue of proper parties and standing as a coverage issue, as Westfield does, it is in fact an affirmative

defense to be raised in the underlying litigation, and not either an exclusion in the policy or a basis to decline a tender of defense.

¶ 40    In *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, this court held that the insurer had a duty to defend a construction defect claim based upon allegations of damage to the personal property of condominium unit owners. Unlike the cases cited by the majority, *Milwaukee Mutual* is on all fours with this case and should govern the outcome here.

¶ 41    There is no ground for an insurer to reject a tender of defense where there is potential liability on the basis of an affirmative defense available to its insured. The only appropriate action for an insurer in such a circumstance is to defend its insured and then raise that affirmative defense on behalf of its insured. See *Illinois Emcasco Insurance Co.*, 2013 IL App (1st) 120735, ¶ 22. In *Illinois Emcasco Insurance Co.*, this court rejected an attempt by the insurer to limit its insured's right to a defense based on a defense in the underlying action. The plaintiff insurer argued in a declaratory judgment action that the court should rule it had no duty to defend its insured by arguing that the general contractor may not have retained sufficient control so as to be vicariously liable for the subcontractor's negligence. This court held, however, that "at this juncture, the question is not whether Waukegan is vicariously liable. Rather, the issue is whether Emcasco has a duty to defend Waukegan because it could *potentially* be found vicariously liable for Walls' injuries." (Emphasis in original.) *Illinois Emcasco Insurance Co.*, 2013 IL App (1st) 120735, ¶ 22. I agree with the Developer that if there is a potentially meritorious defense to the Association lawsuit, such as standing, Westfield should have defended the claim and raised the defense.

¶ 42    Finally, I find it instructive that Westfield chose to defend Total Roofing in the Association lawsuit, as Westfield must have determined that the complaint triggered its duty to defend Total Roofing. The circuit court below initially also found this fact instructive in its first ruling in favor of the Developer, before it granted Westfield's motion to reconsider and entered judgment in favor of Westfield. Why Westfield accepted Total Roofing's tender of defense but rejected the Developer's tender of defense is inexplicable, as the same allegations are involved, in the same complaint, under the same policies, and the Developer was an additional insured under the same policies. While the majority questions whether the Developer was an additional insured after the operations were completed, the policy contained an additional insured endorsement that did not terminate the Developer's additional insured status upon completed operations. I believe the circuit court had it right the first time. I would reverse.