2022 IL App (1st) 211201-U

SECOND DIVISION
September 20, 2022

No. 1-21-1201

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE CO., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff- Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 2066 |
| | ) | |
| SUNIL SINHA and GUNJAN JAIN, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County granting summary judgment in favor of insurer on insurer's declaratory judgment action for a declaration it had no duty to defend suit by homeowners for damages arising from insured's allegedly faulty workmanship; insured's allegedly faulty workmanship was not an "occurrence" under the terms of insured's commercial general liability policy with insurer and, therefore, homeowners' claimed losses were not covered by the policy.

¶ 2    In February 2020, plaintiff, American Family Mutual Insurance Company (American Family), filed a complaint for declaratory judgment against homeowners, Sunil Sinha and Gunjan Jain (homeowners), for a declaration American Family did not have a duty to defend its insured, Mario's Landscaping, Inc. (Mario's) in homeowners' May 2018 lawsuit against Mario's alleging Mario's faulty workmanship damaged homeowners' property. On June 21, 2021,

American Family filed a motion for summary judgment on the grounds (1) Mario's does not qualify as an insured under the policy at issue, (2) homeowners' complaint does not allege property damage within the meaning of the policy, and (3) homeowners' complaint does not allege an occurrence within the meaning of the policy. On August 21, 2021, the circuit court of Cook County granted summary judgment in favor of American Family and against homeowners. For the following reasons we affirm.

¶ 3                                BACKGROUND

¶ 4      In June 2016, American Family issued a general liability insurance policy to Egecipo Chavez d/b/a Mario's Landscaping (Mario's). In December 2016, homeowners contracted Mario's to construct a retaining wall, gazebo, landscaping, grading, and hardscaping around a swimming pool which Sunco Pools, a separate contractor, would install at their home. Sunco Pools is not a party to this appeal. In December 2018 homeowners filed an amended complaint against Mario's and Sunco Pools (the "underlying complaint"). Homeowners' underlying complaint against Sunco Pools is not implicated in this appeal. Homeowners' underlying complaint against Mario's alleged Mario's provided deficient services and that major defects existed in Mario's work. The underlying complaint alleged, in counts for fraud, breach of contract, and unjust enrichment, that homeowners suffered "direct damages," damages for payment for work that was "not actually performed or [was] defectively performed," and damages to correct Mario's work.

¶ 5      On February 19, 2020, American Family filed a complaint for declaratory judgment against homeowners and Mario's (declaratory judgment complaint or complaint). American Family's complaint alleged, in pertinent part, that on or about June 6, 2016, American Family issued Mario's a general liability insurance policy with a term of one year. The declaratory

judgment complaint alleged Mario's cancelled the policy on June 6, 2017. The complaint sought a declaration that American Family provides no coverage to Mario's with respect to its conduct in the legal action by homeowners.

¶ 6        The policy provided coverage for bodily injury and property damage "caused by an 'occurrence.' " The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition." American Family's complaint sought a declaration the policy does not provide coverage for homeowners' action because the allegations in homeowners' complaint "does not involve *** damages caused by an accident" and "does not plead damages because of defined 'property damage' but rather economic loses outside the scope of the designated policy of insurance." American Family's complaint further alleged the policy contained a number of exclusions from coverage. The complaint alleged the policy excluded coverage for bodily injury or property damage "expected or intended from the standpoint of the insured." The underlying complaint alleged the damages alleged in homeowners' complaint "were expected by *** Mario's *** within the scope of the exclusion."

¶ 7        The declaratory judgment complaint also alleged the policy excluded coverage for real property on which the insured was performing operations and that part of any property that must be restored, repaired or replaced because "your work" was "incorrectly performed on it." American Family's complaint further alleged the policy excluded coverage for property damage to "your work" arising out of it or any part of it "and included in the 'products-completed operations hazard,' " which the policy defines as including all "property damage" arising out of the insured's work including work "that may need service maintenance, correction, repair, or replacement." American Family's complaint also alleged the policy excluded coverage for

property damage to property "that has not been physically injured, arising out of [a] defect, deficiency, or inadequacy" in the insured's product or the insured's work and for a delay to perform a contract. American Family's complaint alleged that homeowners' complaint "urges damage to property that has not been physically injured as a result of a defect, deficiency, inadequacy or dangerous condition in Mario's *** work and/or product, or, a delay of [*sic*] failure by Mario's *** to perform a contract." The complaint alleged that homeowners' underlying complaint alleged damages to property that must be repaired because Mario's work was incorrectly performed on it and which fits within the exclusions for the insured's product and work; therefore, those exclusions apply; and coverage is excluded to the extent homeowners' complaint sought to hold Mario's liable based on liability in contract.

¶ 8     On April 22, 2021, the trial court entered a default judgment against Mario's.

¶ 9     On August 24, 2021, the trial court entered a judgment granting American Family's motion for summary judgment in favor of American Family and against homeowners. The trial court found American Family "has no duty to defend or indemnify the Mario's Defendants in the Underlying Suit because the Underlying Complaint does not allege an 'occurrence' or 'property damage' under the Policy."

¶ 10    This appeal followed.

¶ 11                                ANALYSIS

¶ 12    We review a trial court judgment granting or denying summary judgment *de novo*. *Klesowitch v. Smith*, 2016 IL App (1st) 150414, ¶ 26. *De novo* review means this court undertakes the same inquiry taken by the trial court without any deference to the trial court's determination. *Claffey v. Huntley*, 2021 IL App (1st) 191938, ¶ 13, *MHM Services, Inc. v. Assurance Co. of America*, 2012 IL App (1st) 112171, ¶ 47. "A reviewing court may affirm a

circuit court's ruling on a motion for summary judgment on any basis in the record, regardless of the reasoning employed by the circuit court." *Better Government Ass'n v. City of Chicago*, 2020 IL App (1st) 190038, ¶ 9.

¶ 13    This appeal involves American Family's request for a declaration it has no duty to defend or indemnify its insured against homeowners' claims in the underlying lawsuit. When an insurer seeks a declaration it has no duty to defend or indemnify, courts look to two key factors: the allegations of the underlying complaint and the terms of the policy at issue. *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 37 (citing *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010)); *Margulis v. BCS Insurance Co.*, 2014 IL App (1st) 140286, ¶ 22. "The threshold to trigger the duty to defend is low. [Citation.]" *General Casualty Co. of Wisconsin v. Burke Engineering Corp.*, 2020 IL App (1st) 191648, ¶ 33. An insurer is justified in refusing an action against its insured only where it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *Margulis*, 2014 IL App (1st) 140286, ¶ 22. If the insurance contract even "might possibly" cover the allegations in the underlying complaint, the insurer must defend. *Id*. Further, if the insured "is entitled to a defense of any portion of an underlying complaint, the insured is entitled to a defense of the entire lawsuit." *Certain Underwriters at Lloyd's London v. Metropolitan Builders, Inc.*, 2019 IL App (1st) 190517, ¶ 90 (citing *Pekin Insurance Co v. Wilson*, 237 Ill. 2d at 453 n. 2).

¶ 14    To determine whether the allegations in the underlying complaint might possibly fall within the policy's coverage, we must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Dahms*, 2016 IL App (1st) 141392, ¶ 37 (citing *Wilson*, 237 Ill. 2d at 455). In this case, the relevant provisions of the insurance policy provided

that the insured is Egecipo Chavez d/b/a Mario's Landscaping, and the policy provided commercial general liability (CGL) coverage. Under the policy American Family "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defined "property damage" as follows: "a. Physical injury to tangible property, including all resulting loss of use of that property. *** b. Loss of use of tangible property that is not physically injured." The policy provided that it applied to "property damage" only if the property damage "is caused by an 'occurrence' that takes place in the 'coverage territory.' " The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶ 15    The policy did not apply to, *inter alia*, property damage that is "expected or intended from the standpoint of the insured," the particular part of real property on which the insured is performing operations if the property damage arises out of those operations, or to the part of any property that must be repaired or replaced because the insured's work was incorrectly performed on it. The policy also did not apply to "property damage" arising out of the insured's work and included in a "products-completed operations hazard."

¶ 16    The underlying complaint goes to homeowners' claims for fraudulent misrepresentation as to Mario's ability to perform (count I), fraudulent misrepresentation as to the status of the work (counts II and IV), fraudulent misrepresentation as to Mario's ability to perform (count III), breach of contract (count V), and unjust enrichment (count VI). In their briefs, homeowners identify paragraphs 17 and 23 of the underlying complaint as the type of sufficient allegations of damage to invoke coverage under the policy:

"17. The defective construction work performed by Mario's Defendants caused extensive property and other damages to Plaintiffs,"

"23.    As a direct and proximate result of defendants' false statement of material fact, and conduct, Plaintiff sustained damages in an amount in excess of $119,204.45, consisting of damages to Plaintiffs, damages to correct Mario's Defendants' unworkmanlike services, the cost to correct certain defects, and direct damages."

¶ 17    For the following reasons we conclude the allegations of the underlying complaint, including paragraphs 17 and 23, are insufficient to trigger coverage.

¶ 18    In this appeal, homeowners acknowledge the general rule in Illinois that "there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work. [Citations.] Rather, the mere repair or replacement of a contractor's poor work product is considered to be the 'natural and ordinary consequences of faulty workmanship,' not an 'accident.' " (Internal quotation marks omitted.) *Certain Underwriters at Lloyd's London*, 2019 IL App (1st) 190517, ¶ 48 (hereinafter, "*Lloyd*'s") (quoting *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, ¶¶ 26-27 (and cases cited therein)). "This principle has been extended to situations where other parts of the same construction project, over which the insured contractor had responsibility, are also damaged. In that situation, as well, the damage is not deemed to be the result of an 'accident' or 'occurrence' but, rather, the natural and ordinary consequence of faulty workmanship." *Id.* ¶ 51. Further, "where the language of an insurance policy explicitly requires physical injury, it cannot be construed to provide coverage on the basis of loss or diminished use simply resulting from the failure of a component to perform as promised. [Citation.] Defective work and products are purely economic losses" for

which there is no coverage under an insurance policy providing coverage for "property damage." *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 19. However, "we have been careful to emphasize that when the underlying lawsuit against the insured contractor alleges damages *beyond* repair and replacement, and *beyond* damage to other parts of the same project over which that contractor was responsible, those additional damages are deemed to be the result of an 'accident.' [Citations.]" *Id*. ¶ 52.

¶ 19    The general rule applies in this case where homeowners seek to recover damages for removing and repairing Mario's work and for economic losses for payments for Mario's work. The counts in the underlying complaint fail to allege facts that might possibly bring the allegations within the coverage in the policy for "property damage" caused by an "occurrence" as defined in the policy where homeowners alleged they suffered damages from fraudulent misrepresentations about Mario's work (counts I through IV), breach of the contract for Mario's work (count V), and unjust enrichment for payment for Mario's work (count VI). Nonetheless, homeowners argue American Family is not entitled to summary judgment. Homeowners do not challenge the general rule in Illinois; rather, homeowners assert they "are alleging significant damages, including the repair and replacement of Mario's work" *and* "they are also alleging other damages which are not within the scope of Mario's work." Homeowners also assert that there is "evidence in the underlying case that would support [their] allegation of damage to personal property outside of the scope of Mario's work." Accordingly, homeowners' argue American Family has a duty to defend Mario's in homeowners' lawsuit. Homeowners further argue that summary judgment in favor of American Family is not warranted because none of the exclusions apply to defeat coverage.

¶ 20    Homeowners argue that all that is required to trigger an insured's duty to defend is a "mere reference to personal property damage" and that facts with respect to the type or nature of the personal property are not necessary. To support that position, homeowners rely on this court's decision in *Lloyd's*, 2019 IL App (1st) 190517. In *Lloyd's*, this court reasoned that we have specifically "rejected the notion that the alleged damage to 'personal property' must be specifically identified in the underlying complaint to trigger coverage for an 'occurrence.' [Citation.]" *Id.* ¶ 82. This court noted that, "in considering whether an insurer has a duty to defend, we read the underlying complaint and the insurance policy in favor of coverage 'unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.' [Citation.]" *Id.*

¶ 21    In *Lloyd*'s this court held that admittedly vague references to damage to "personal property" were enough to allege "property damage" caused by an "occurrence" under the policy in that case and, therefore, were enough to trigger the insurer's duty to defend. *Lloyd's*, 2019 IL App (1st) 190517, ¶ 89. In this case homeowners specifically rely on the allegations in their underlying complaint that "the defective construction work performed by Mario's Defendants caused extensive property and other damages to Plaintiffs," and on alleged "evidence in the underlying case" that homeowners "noticed that there was water infiltration into their basement."

¶ 22    American Family responds, in pertinent part, that (a) homeowners' claims relating to Mario's construction work are not covered by the policy, and (b) homeowners' remaining claims "do not fall within the scope of coverage for property damage caused by an accident" and are subject to several policy exclusions. Regarding these positions, American Family argues (a) that homeowners' claims of (1) deliberate misrepresentations and fraud are not covered by the policy, and (2) faulty construction and incomplete work do not seek damages caused by an "occurrence"

under the policy but rather seek damages that are the natural and ordinary consequence of poor workmanship. See *Lloyd's*, 2019 IL App (1st) 190517, ¶ 48 ("the mere repair or replacement of a contractor's poor work product is considered to be the ' "natural and ordinary consequences of faulty workmanship," ' not an ' "accident." ' "), therefore, the underlying complaint fails to give rise to damages that are covered by the policy; and (b) the rule, that damage to "other property" other than property within the scope of the insured's work is not the natural and ordinary consequence of poor workmanship but rather is caused by an accident, does not apply to general contractors (see *Acuity v. 950 W. Huron*, 2019 IL App (1st) 180743, ¶ 43), and regardless, the underlying complaint in this case does not allege damage to any personal property or any property other than property within the scope of Mario's work.

¶ 23     Additionally, American Family argues that the counts in homeowners' underlying complaint for fraudulent misrepresentation (counts I and II), fraud (counts III and IV), breach of contract (count V) and unjust enrichment (count VI) all involve voluntary, intentional misconduct and not an "accident," and homeowners only seek damages for economic losses— the amount paid to Mario's for its defective work and the cost to complete and correct it—not damages for "property damage" as defined in the policy. Additionally, homeowners' references to water infiltration in their basement and resulting damage to "other property" that is outside the scope of Mario's contractual obligations does not invoke a duty to defend because homeowners did not include a claim for water infiltration in their complaint.

¶ 24     We note the trial court made additional findings with regard to American Family's alleged grounds for a declaration it lacked a duty to defend; specifically the trial court found that (a) there is at minimum a question of fact as to whether Mario's is a named insured under the policy, and (b) the consumer and common law fraud claims are based on intentional conduct and

do not constitute an "occurrence" under the policy. Homeowners have not made any arguments concerning either of these findings by the trial court; therefore, they are forfeited from our review. *Victim A. v. Song*, 2021 IL App (1st) 200826, ¶ 11.

¶ 25 This court most recently addressed the level of specificity required to allege damage to property that is beyond the scope of contracted work in an action seeking a declaration regarding a duty to defend an underlying lawsuit under a CGL policy based on alleged property damage by a contractor in *Lloyd's*. In *Lloyd's*, in each count of the underlying complaint, the insured alleged two different kinds of damages: "losses including, but not limited to, damage to both [the property owner's] real and personal property." (Internal quotation marks omitted.) *Lloyd's*, 2019 Il App (1st) 190517, ¶ 74. This court recognized that the underlying complaint gave no description whatsoever of what "personal property" was damaged and that from the complaint the court had "no clue" about the alleged damage to the personal property. *Id.* ¶ 79. Despite the fact the underlying complaint was vague on these points, this court found the allegations at least potentially satisfied the definition of "occurrence." *Id.* ¶ 82 (citing *J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, ¶ 20). This court expressly relied on the fact that "each count of the Underlying Complaint specifically alleges damage to the owner's personal, as well as real, property." See *id.* ¶¶ 74, 86.

¶ 26 Here, we have compared the allegations in the underlying complaint against the relevant policy language (*Lloyd's*, 2019 IL App (1st) 190517, ¶ 27) while remaining cognizant that even with Illinois' policy of liberal construction of pleadings, a complaint must set forth the facts necessary for recovery under an identifiable and viable theory of recovery (*Alpha School Bus Co. v Wager*, 391 Ill. App. 3d 722, 735 (2009), *Beauchamp v. Dart*, 2022 IL App (1st) 210091, ¶ 29.

We find that the underlying complaint in this case does not allege facts that fall within or potentially within the policy's coverage. *Id.*

¶ 27    Homeowners' allegations of damage to personal property outside the scope of Mario's work is, like the allegations in *Lloyd*'s, vague. Homeowners rely most heavily on the generic claim that "[t]he defective construction work performed by Mario's Defendants caused extensive property and other damages to Plaintiffs." We find this generic allegation is insufficient to allege damages that are beyond repair and replacement of Mario's work or other parts of the project over which Mario's was responsible.

¶ 28    Nor does the underlying complaint allege damage to something other than the project itself. See *Lloyd's*, 2019 IL App (1st) 190517, ¶ 52 (citing *Acuity Insurance*, 2019 IL App (1st) 180743, ¶ 29). The allegation in this case is unlike the allegations in *Lloyd*'s. In *Lloyd*'s, the property owners specifically alleged losses to its "real *and* personal property." (Emphasis added.) *Lloyd*'s, 2019 IL App (1st) 190517, ¶ 13. Drawing this distinction between real and personal property helped to clarify that the property owner sought recoveries for distinct species of damages: one for the defective work (which was not covered) and one for the loss of personal property (which potentially was covered). See *id*. ¶ 86 ("each count of the Underling Complaint specifically alleges damage to the owner's personal, as well as real, property"). Similarly, in *J.P. Larsen, Inc.*, the court relied in part on the fact that the complaint specifically stated that "*apart* from the property damage," repairs to correct the construction defects would be required. *J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, ¶ 20.

¶ 29    Unlike the allegations in *Lloyd*'s and *J.P. Larsen*, the allegations on which homeowners rely do not allege damage to homeowners' property that is "quite obviously" damage to "something other than the project itself." The allegations state Mario's caused "extensive

property damage," but in context this is just, if not more, likely a reference to the alleged property damage detailed extensively in the preceding paragraph in the complaint from defects in the construction of the project itself. We cannot say the allegation of "property damage" or the related passing reference to "other damages" are "quite obviously" allegations of damage to something other than the project itself.

¶ 30    Furthermore, we find that because Illinois follows an "eight corner" approach to construing an insurance policy, homeowners' references to possible water infiltration are not highly persuasive in our determination because no such claims appear on the face of the underlying complaint. Under the "eight corners" approach, "the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage." *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 36. In applying this approach, "[o]ur supreme court has long held that an insurer's duty to defend an action brought against the insured is determined solely by reference to the allegations of the complaint." (Internal quotation marks and citations omitted.) *Id.* However, "on a motion for summary judgment in a declaratory judgment action, when determining whether a duty to defend exists, the court is not limited to comparing the insurance policy to the allegations of the complaint but may consider evidence usually considered in ruling on a motion for summary judgment, so long as such evidence does not tend to determine an issue critical to the determination of the underlying lawsuit." *Id.* ¶ 39.

¶ 31    "Pursuant to section 2-1005 of the Code of Civil Procedure [citation], a party may move for summary judgment and may file supporting affidavits. The opposing party may file counteraffidavits. In addition to the affidavits, the trial court may consider the pleadings,

depositions and admissions to determine whether any genuine issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law." *City of Maroa v. Illinois Central R.R.*, 229 Ill. App. 3d 503, 505 (1992). In this case, homeowners point this court to an exhibit to the underlying complaint in support of their claim the record contains evidence of damage to property that was beyond the scope of Mario's work. Homeowners have offered no argument that their alleged water infiltration evidence was evidence appropriate to or of the type "accorded generally to a party during a motion for summary judgment." See *Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶¶ 37-38; *Monticello Insurance Co. v. Wil-Freds Construction Inc.*, 277 Ill. App. 3d 697, 708 (1996) (Evidence of water damage to cars referenced in deposition is insufficient to defeat summary judgment and trigger coverage where the damage to cars was not pled in the complaint.)

¶ 32     Even considering this exhibit as part of the pleadings (*Biefeldt v. Wilson*, 2022 IL App (1st) 210336, ¶ 18 ("an exhibit attached to a complaint becomes part of the pleading for every purpose, including the decision on a motion to dismiss"), the exhibit does not state facts of damage to property outside the scope of work homeowners contracted Mario's to perform.

¶ 33     The exhibit states that is a report by a claims specialist in response to homeowners' request that the specialist "assess claims and concerns related to construction of outdoor improvements." The report lists the "partially-completed improvements [to] include a wood-framed gazebo, fireplace, barbecue, swimming pool and hardscaping." The specialist states that they "observed conditions related to the concerns" and purports to list the specialist's "assessment as the cause and significance of the concerns." The report lists seventeen concerns, only one of which does not expressly reference the work under Mario's contract with homeowners. Item sixteen states: "Water staining is evident in the window well on the west side

of the house."[1] The report states: "In summary, these concerns primarily relate to design and construction deficiencies as well as construction details that did not met the owners' expectations."

¶ 34     The report itself suggests the alleged water infiltration is a consequence of the construction of the fireplace and there are no facts stated in the exhibit that suggest this water infiltration damaged homeowners' personal property. Compare, *Lloyd*'s, 2019 IL App (1st) 190517, ¶ 53 (describing distinction between damage to property that is part of the project or to other parts of the same project and damages that are beyond repair and replacement). The only damages that could be gleaned from the facts stated in the exhibit would be damages or economic losses to repair a defective fireplace installation which are "the natural and ordinary consequence of faulty workmanship." See *Lloyd*'s, 2019 Il App (1st) 190517, ¶ 51.

¶ 35     Homeowners' purported facts are more like the insured's allegations in *West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 6. In *West Van Buren*, a condominium association alleged that defects in the construction of a condominium building caused water infiltration and alleged that individual unit owners in the condominium "experienced damage to personal and other property as a result of the water infiltration." *Id*. ¶ 6. The developer of the condominium asserted its CGL insurer had a duty to defend "because the underlying complaint contained allegations of personal property damage that were within the policy's coverage. *Id*. ¶ 7. This court found the complaint failed to allege an "accident" under the policy in that case because the complaint either focused

---

[1]     Item seventeen states "Staining is evident below a penetration through the block wall below the fireplace near the southwest corner of the house." This "concern" is thus connected to the construction of the fireplace, which was within Mario's scope of work.

on the intentional bad acts of the developer or "nonfortuitous events, like the resulting damage to the condo building due to shoddy workmanship." *Id*. ¶ 18.

¶ 36   This court found that any alleged damage to personal property was not an accident and therefore not the result of an occurrence. *Id*. This court rejected the developer's argument the allegations of damage to condominium owners' personal property triggered a duty to defend because, the court found, "these allegations were meant to simply bolster the contention that water infiltration generally occurred and caused damages." This court noted that the complaint did not seek damages for any personal property damage. This court found the allegations of personal property damage "were not offered for the purpose of recovery" but were "purely tangential to the Condo Association's claim for damages for repair and remediation of the roof." *Id*. ¶ 22. This court held that a "free-standing reference to a fact, that is not attached to any particular theory of recovery" does not trigger a duty to defend. *Id*. (citing *Acuity v. Lenny Szarek, Inc.*, 128 F. Supp. 3d 1053, 1059-62 (2015)).

¶ 37   The "fact" on which homeowners primarily rely is the type of "free standing" reference, not attached to any theory of recovery possibly within the policy's coverage, that this court rejected in *West Van Buren* as insufficient to trigger a duty defend. The only "fact" about damage to personal property is untethered to any claim for relief under the policy and there is nothing to suggest that the fact was offered for the purpose of recovery for the alleged damage. Rather, its context is such that the fact only exists in the record to bolster homeowners' contention Mario's faulty construction resulted in damages. Under the circumstances the fact is insufficient to trigger a duty to defend on American Family. See *id.*

¶ 38   Under *West Van Buren, LLC* and *Lenny Szarek, Inc.*, the question for the court is whether the alleging party could recover damages that are outside the scope of the project at issue, and,

therefore, potentially within the policy's coverage for an "occurrence," based on the allegations presented to the court. This question remains regardless of whether an inability to recover is due to the nature of the claims themselves or the presence or absence of the proper parties. See *Lenny Szarek, Inc.*, 128 F. Supp. 3d at 1061. In *Lenny Szarek, Inc.*, the owners of allegedly damaged personal property were not parties to the underlying complaint. The court found that the "only judgment that could issue would be for property damage to the condominium building itself, which *is not* covered." However, without reference to the presence or absence of the personal property owners, the court held that "[i]f any judgment that might issue could only award damages for property damage that is not covered by the Acuity policies, then there is no duty to defend." *Lenny Szarek, Inc.*, 128 F. Supp. 3d at 1061.

¶ 39    Similarly, in this case, based on the facts homeowners' have presented, any judgment could only award damages for alleged property damage that is not covered by the policy—that is property damage caused by Mario's workmanship on the project for which it was contracted. Any allegation of fact of water infiltration that may be found in the record does not support any claim (and was not offered for any purpose) that was not merely "tangential to *** [a] claim for damages for repair and remediation" of Mario's faulty construction. See *id.* ¶ 22. At best, that fact exists as evidence of Mario's defective work. See *id.* ¶ 21 (citing *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 964 (1991) ("The State's complaint alleges physical injury to State employees in that some had to be taken to the hospital but we find these allegations are made not for recovery for the injured employees but are offered as evidence of the problems that resulted from the defective HVAC system.")). Like the *West Van Buren* court, we find that the evidence on file, "even liberally construed in [homeowners'] favor, does

not offer allegations towards a theory of recovery that fits within the potential coverage of the policy." See *West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 22.

¶ 40    In light of our finding, we have no need to address whether homeowners' claims state claims for recovery of "property damage" as defined by the policy or whether any exclusions apply to homeowners' claims. We hold that the underlying complaint does not allege an "occurrence" as defined by the policy; therefore, there can be no duty to defend. See *Burke Engineering Corp.*, 2020 IL App (1st) 191648, ¶ 40 (holding the insurer did not have a duty to defend where the underlying complaints did not contain any factual allegations supporting the existence of an "occurrence" as defined by the policies). The material facts are not in dispute, and American Family is entitled to summary judgment as a matter of law. Accordingly, the trial court's judgment is affirmed.

¶ 41                          CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the circuit court of Cook County granting summary judgment in favor of American Family and against homeowners is affirmed.

¶ 43    Affirmed.